## THE STATE OF KANSAS V. ORR DECKER.

1. FALSE PRETENSES—*Attempt to Obtain Property*—*Information.* A criminal information attempting to charge the defendant with the offense of attempting to obtain certain personal property by false pretenses is not insufficient because it fails in express terms to allege that the defendant failed in the perpetration of the principal offense, or that he was prevented or intercepted in the perpetration of the same..

2. EVIDENCE, *Not Insufficient.* Where a criminal information charges the defendant with attempting to obtain from N. four promissory notes by means of a false and fraudulent draft drawn in favor of B. and indorsed by B., the evidence is not necessarily insufficient to prove the guilt of the defendant because it fails to show that B. was insolvent.

### *Appeal from Dickinson District Court.*

THE defendant, *Orr Decker*, was found guilty by the jury, and sentenced by the court to one year's imprisonment in the penitentiary, upon a criminal information which reads as follows, ( omitting court and title:)

"In the name and by the authority of the state of Kansas, I, George W. Hurd, county attorney within and for said county of Dickinson and state of Kansas, do now here give the said court to understand and be informed that the above-named defendants, James Bottomly and Orr Decker, on the 21st day of September, 1886, at and within said county of Dickinson and state of Kansas, then and there being, did then and there know that said George W. Hurd then and there had in his possession and under his control four certain promissory notes, of the goods and chattels of one George M. Noble, to wit: One promissory note dated May 25, 1886, for fifteen hundred dollars, signed by Orr Decker and Elvina M. Decker, and of the value of one thousand five hundred dollars; and one certain promissory note dated May 25, 1886, for five hundred dollars, and of the value of five hundred dollars, and signed by Orr Decker and Elvina M. Decker; and one certain promissory note for one thousand dollars, dated May 25, 1886, signed by Orr Decker and Elvina M. Decker, and of the value of one thousand dollars; and one certain promissory note dated May 25, 1886, for the sum of one thousand dollars, signed by

Orr Decker and Elvina M. Decker, and of the value of one thousand dollars—all of which said promissory notes were then and there of the goods, chattels and property of said George M. Noble, and in the possession and under the control of said George W. Hurd, and of the aggregate value of four thousand dollars.

"And the said defendants, James Bottomly and Orr Decker, then and there being persons of evil disposition, ill-will and ill-fame, and devising and intending by unlawful ways and means to obtain and get into their hands and possession the aforesaid promissory notes, with the intent, unlawfully, feloniously, knowingly, designedly, willfully, and falsely pretend to the said George W. Hurd that a certain written paper which the said James. Bottomly and Orr Decker then and there produced to the said George W. Hurd, and which written paper is in form a draft, and in words and figures as follows, to wit:

" '$3,000.                    ABILENE, KANSAS, September 20, 1886.
" 'At sight pay to order of J. H. Brady three thousand dollars, for value received, and charge to account of James Bottomly.
" 'To First National Bank, Clinton, Iowa.'

And which written paper then and there had written on the back thereof the words following, to wit: 'Pay to the order of G. W. Hurd.—J. H. BRADY,' was a good and genuine draft for the payment of the sum of three thousand dollars, and of the value of three thousand dollars; whereas in truth and in fact said written paper was not a good and genuine draft or order for the payment of three thousand dollars, and was not of the value of three thousand dollars or any other sum of money, but was absolutely worthless, and of no value whatever; and there was not then and never had been any bank in existence known, called, described or named 'First National Bank, Clinton, Iowa,' or any name similar thereto, which said defendants then and there well knew; and said defendants then and there well knew that said written paper was not a good and genuine draft of the value of three thousand dollars, and that the same was absolutely worthless and of no value whatever; and said defendants, James Bottomly and Orr Decker, then and there told and stated to George W. Hurd that said defendant, James Bottomly, then had in the First National Bank of Clinton, Iowa, the sum of three thousand dollars to pay said draft, whereas in truth and in fact there was no such bank in existence as the First National Bank of Clinton, Iowa, or in any other bank in Clinton, Iowa, which said defendants then and there well knew.

"And said defendants, James Bottomly and Orr Decker, then and there unlawfully, feloniously, willfully, designedly, and with the intent the said George M. Noble and George W. Hurd to cheat and defraud, did offer and propose to deliver said false and worthless draft to said George W. Hurd in payment of the sum of three thousand dollars on the value of the above said four certain promissory notes; and to satisfy the balance of the principal and interest of said four promissory notes signed by Orr Decker and Elvina M. Decker, by the execution and delivery of another promissory note, the amount and description of which I am unable to give; and did then and there unlawfully, feloniously, willfully, designedly, and with the intent the said George M. Noble and George W. Hurd to cheat and defraud, deliver said false and worthless draft and said other promissory note, the amount and description of which I am unable to give, to said George W. Hurd, and demanded from the said George W. Hurd the said four promissory notes signed by said Orr Decker and Elvina M. Decker; and by means of said false and fraudulent pretenses said defendants, James Bottomly and Orr Decker, then and there, on the said 21st day of September, 1886, at and within said county of Dickinson and state of Kansas, in the manner and by the means aforesaid, did then and there unlawfully, feloniously, knowingly, willfully and designedly attempt and endeavor to obtain from the said George W. Hurd the aforesaid four promissory notes of the goods and chattels of the said George M. Noble, and of the value of four thousand dollars, with the intent then and there the said George M. Noble and George W. Hurd to cheat and defraud of the same; contrary to the form of the statutes of the state of Kansas in such cases made and provided."

From the foregoing judgment, at the October Term, 1886, the defendant, *Decker*, appeals.

*J. G. Mohler*, for appellant.

*S. B. Bradford*, attorney general, and *George W. Hurd*, county attorney, for The State.

The opinion of the court was delivered by

VALENTINE, J.: The defendant, Orr Decker, was charged, along with James Bottomly, by information filed by the county attorney in the district court of Dickinson county, with

the offense of attempting to obtain certain personal property by false pretenses. A motion was made to quash the information, which was overruled by the court. The charge against Decker was then tried before the court and a jury, and he was found guilty, as charged in the information. He then moved for a new trial, and also in arrest of judgment, which motions were overruled by the court. He was then sentenced to imprisonment in the penitentiary for one year, from which sentence he appeals.

The first question presented to this court is with regard to the sufficiency of the information. It is attempted to be charged in the information that Orr Decker, in violation of § 283 of the act relating to crimes and punishments, attempted to commit the offense prohibited by § 94 of said act. Said § 283 reads as follows:

"Sec. 283. Every person who shall attempt to commit an offense prohibited by law, and in such attempt shall do any act toward the commission of such offense, but shall fail in the perpetration thereof, or shall be prevented or intercepted in executing the same, upon conviction thereof shall, in cases where no provision is made by law for the punishment of such attempt, be punished as follows," etc.

It is claimed that the information is not sufficient because it does not allege in express terms that the defendant failed in the perpetration of the offense, or that he was prevented or intercepted in the perpetration of the same; and this is claimed upon the ground, as we understand, that such failure or such prevention or interception is a part of the offense, and therefore that, as a part of the offense, it must be stated in the information, in compliance with § 103 of the criminal code, which provides that the indictment or information must contain "a statement of the facts constituting the offense, in plain and concise language, without repetition." Now we do not think that such failure or such prevention or interception constitutes any part of the offense. When the attempt to commit the principal or ultimate offense is made, the offense of attempting to commit such principal or ultimate offense is complete. If the attempt is carried into complete execution,

then not only the offense of attempting to commit an offense is complete, but also the commission of the principal or ultimate offense is also complete. Even where an indictment or information charges the full commission of an offense, without the slighest intimation that there was any failure on the part of the defendant in the perpetration thereof, or any prevention or interception in executing the same, still he may be convicted under §121 of the criminal code of attempting only to commit the offense. Said §121 reads as follows:

"Sec. 121. Upon an indictment for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment, and guilty of any degree inferior thereto, *or of an attempt to commit the offense.*"

Of course where it is intended to prosecute a defendant only for an attempt to commit an offense, it would be better to state in the indictment or information that the defendant had failed in the perpetration thereof, or that he had been prevented or intercepted in executing the same; and such would be in accordance with the precedents. But still, no good reason can be given why an indictment or information should be considered as insufficient if it does not make such a statement. In the present case, however, the whole tenor and effect of the information is to show, impliedly at least, a failure on the part of the defendant to commit the principal or ultimate offense. We think the information is sufficient, without said statement of failure, prevention, or interception.

1. Failure to commit principal offense; sufficient information.

The second question presented to this court is, whether the evidence sufficiently proves the offense charged in the information. It is claimed by the defendant that it does not; in our opinion, however, it does. It appears from the evidence that on September 11, 1886, and prior thereto, the defendant, Orr Decker, owned a farm in Dickinson county, Kansas, and also owned a livery stable in the city of Abilene, in that county. He was also at the same time indebted on four promissory notes, owned by George M. Noble, but placed in

46 — 36 KAS.

the hands of Stambaugh, Hurd & Dewey, attorneys at law, for collection. These notes were secured by mortgages on the farm and on the livery stable. James Bottomly resided at Kansas City, Missouri. Decker had also resided there, or at least had been there for some time, and was acquainted with Bottomly. On September 11 and September 14, of the year aforesaid, Decker sent telegraphic dispatches to Bottomly to come to Abilene, and also procured the telegraph operator to send a dispatch to the agent at Kansas City to purchase a railroad ticket for Bottomly's transportation from Kansas City to Abilene. Bottomly himself was a man of but little property. On Saturday, September 18, Bottomly was in Abilene. Whether he arrived there on that day, or sooner, is not shown. On that day he appeared at the office of a land agent in that city by the name of James H. Brady, and represented himself to be from the state of Iowa, and that he was desirous of purchasing a farm in Dickinson county. Brady had several farms for sale, and among them the farm of the defendant, Decker. Brady told Bottomly to describe the kind of farm which he wanted, and then he would try to furnish him one of that kind. Bottomly did describe the kind of farm which he wanted, and Brady believed that the farm of Decker would suit him, and invited Bottomly to ride out with him the next day to see the farm, provided Bottomly had no conscientious scruples in doing so on Sunday. Bottomly said he had none, and they went out to see the farm on Sunday. Bottomly examined the farm carefully, and had much conversation concerning it. The next day was taken up in negotiations concerning the farm. Bottomly concluded that the farm would suit him, and wanted to purchase it. Brady then saw Decker, and Decker wished to sell it, but both Bottomly and Decker wished to do the business entirely through Brady, and not with each other. Finally Brady introduced Bottomly to Decker, and they showed no signs of recognizing each other, but pretended to be strangers. Finally all the arrangements were made for the purchase and sale of the farm, and it was agreed that on the next morning early they should go

to the office of Stambaugh, Hurd & Dewey, and deliver to G. W. Hurd, one of the members of such firm, a draft for the sum of $3,000, drawn on the First National Bank of Clinton, Iowa, by Bottomly, in favor of Brady, and indorsed by Brady; and also to deliver to Hurd a promissory note for something over $1,000, secured by a mortgage on the livery stable, and obtain from Hurd the aforesaid four promissory notes belonging to Noble. Some kind of suit had already been commenced by Hurd with regard to these notes, or the mortgages securing them. In pursuance of the foregoing arrangement the parties did go to Hurd's office, and did deliver to him the aforesaid draft and note and mortgage, Bottomly delivering to him the draft, and Decker delivering to him the note and mortgage, and Decker demanded the aforesaid four promissory notes. Bottomly at the time stated to Hurd that the draft was good, and that he had the amount of money which it called for in said bank. Hurd, however, declined to deliver the notes until he could ascertain whether the draft was in fact good or not, stating that it would take only a short time to telegraph to Clinton, Iowa, and ascertain that fact. Bottomly then demanded a return of the draft; but Decker still demanded the delivery to him of the four promissory notes, and continued to demand the same until Hurd left the office, which was within a few minutes ·after the draft and note and mortgage were delivered to him. Hurd, being convinced that this transaction on the part of Bottomly and Decker was an attempt, by means of a false and fraudulent draft, and false and fraudulent declarations, to procure the four promissory notes aforesaid, procured the arrest of Bottomly and Decker. There was really no such bank in existence as the First National Bank of Clinton, Iowa, nor anything like it; and Bottomly had no money in any such bank, and probably none in any bank. While the foregoing facts tend to inculpate Decker, there was no evidence tending to exculpate him.

The principal ground upon which it is claimed that the evidence is not sufficient to convict Decker of the offense

charged against him, is as follows: The information charges
that it was George M. Noble and George W. Hurd that the
defendants intended to cheat and defraud, and that it was by
means of the false and fraudulent draft, drawn on the First
National Bank of Clinton, Iowa, coupled with the false and
fraudulent assertions that the draft was good, and that Bot-
tomly had the money in the bank with which to pay the draft,
that the fraud upon Noble and Hurd was intended to be per-
petrated.    Now it appears from the evidence that this draft
was indorsed  by James H. Brady, *and there was no evidence
tending to show that Brady was insolvent.*  It is therefore claimed
that there was a failure of proof with reference to the defend-
ant's guilt, because of this failure on the part of the prosecu-
tion to show that Brady was insolvent.    And this is claimed
solely upon the ground that if Brady was solvent neither Noble
nor Hurd could have been defrauded.    This claim is plausible,

2. Evidence, not but we do not think that it is good.    Even if
insufficient. · Brady was entirely solvent, and in all probability
he was, still the draft was false and fraudulent.    It was not
what it appeared to be, or what it was represented to be.    It
was not a draft drawn upon an actual bank, or for money
actually belonging to the drawer, or for any money subject
to the payment of the draft.    In all this the draft was false
and fraudulent, and it was not worth what it otherwise would
have been.    Even if the draft had some value because of
Brady's indorsement upon it, still it was not as valuable as
it would have been if it had been drawn on a real bank and
for money actually in the bank belonging to the drawer and
subject to the payment of the draft.    It was an attempted
fraud upon Noble and Hurd to attempt to procure the afore-
said promissory notes from Hurd by means of the delivery to
him of such a false and fraudulent draft.    It was a fraud upon
Noble and Hurd to attempt to procure from Hurd said notes,
without delivering to him just such a paper as the parties
represented the draft to be.    Noble and Hurd wanted the
money and nothing else, but Hurd would have accepted a draft
if he had believed it to be the equivalent of money ; but neither

Noble nor Hurd wanted to procure a false and fraudulent draft, nor to purchase a lawsuit against Brady, however good Brady may have been financially. It is no defense to say that although the draft was not what it was represented to be, still that it was of some value. It was a fraud upon Noble and Hurd to deliver to Hurd a thing different from what it appeared to be, and different from what it was represented to be, and not as valuable as it was represented to be.

We think upon the evidence in this case the jury were justified in finding the defendant, Decker, guilty as charged in the information. Undoubtedly he and Bottomly formed a conspiracy to obtain the aforesaid notes from Hurd by means of the aforesaid draft, and they actually attempted to carry the conspiracy into execution.

The defendant's counsel has presented a few other points to this court, but we do not think that they are tenable, nor do we think that they require any comment.

The judgment of the court below will be affirmed.

All the Justices concurring.