[No. 2982.  Decided November 26, 1898.]

THE STATE OF WASHINGTON, *Respondent,* v. ARCHIE McGILVERY, *Appellant.*

ATTEMPT TO COMMIT INCEST—INFORMATION—INTENT—KNOWLEDGE OF RELATIONSHIP—CONSENT—EVIDENCE—MARRIAGE—CROSS-EXAMINATION.

A preliminary examination before a committing magistrate, prior to the filing of an information for a felony, is not essential, under art. 1, § 25, of the constitution permitting prosecutions by information, as the legislature may prescribe, and under Bal. Code, § 6802 (Code Proc., § 1204), providing in what cases informations may be filed.

An information charging an attempt to commit incest is not bad because it does not specifically allege the purpose and intent of the parties to carnally know each other, if such intent is the necessary and irresistible inference to be derived from the language employed.

An information charging an attempt to commit a crime need not negative the presumption that it failed of commission through the volition of defendant, since the subsequent abandonment cannot avail defendant, if the elements of an attempt existed on his part.

An information charging a man with the crime of incest is not bad for failing to charge the woman with knowledge of their relationship, if the knowledge of the defendant is duly charged.

Where a witness had testified to the marriage between his mother and defendant, on his direct examination, it was not proper cross-examination to question him as to a previous marriage between his mother and his own father.

The refusal of the court to exclude defendant's wife from the court room, during his trial for incest, was not error, although she was not a competent witness, if there was no demonstration or improper conduct on her part.

In determining the consent or non-consent of the woman, upon the trial of the man for an attempt to commit incest with her, the jury are not restricted to a consideration of her testimony alone, but have a right to consider all the surrounding circumstances.

A legal marriage under the laws of Idaho is established by proof that a marriage ceremony was performed in a church, in the presence of witnesses, by a minister who, under the law, was authorized to perform such ceremony, and that the ceremony was followed by the cohabitation of the parties as man and wife, although there is no proof of a previous license being procured and a subsequent return of the marriage made to the officer issuing the license, as § 2429, Rev. Stat. Idaho, 1887, while requiring marriage to be solemnized, authenticated and recorded as provided in this chapter, further provides that "non-compliance with its provisions does not invalidate any lawful marriage."

Where secondary evidence of marriage has been received without objection at the trial, it cannot be urged on appeal that the best evidence should have been required.

Appeal from Superior Court, Whitman County.—Hon. WILLIAM McDONALD, Judge. Affirmed.

*M. O. Reed* (*Fullerton & Ettinger,* of counsel), for appellant:

In support of the contention that there must be a preliminary examination before a committing magistrate, in

16—20wash.

order to warrant the filing of an information, when neither the court nor the grand jury is in session, counsel cite *Yaner v. People,* 34 Mich. 286; *O'Hara v. People,* 41 Mich. 623.

Where the intent with which an act is done is a substantive element of the offense, then the intent must be alleged and not left to inference. *State v. Feamster,* 12 Wash. 461; *Roberts v. People,* 19 Mich. 401; 1 Bishop, Criminal Procedure (3d ed.), § 521; *Commonwealth v. Dean,* 110 Mass. 64; Wharton, Criminal Pleadings and Practice (8th ed.), § 163 a.

The information is bad in that it does not allege that the attempt charged failed in commission, because of some inability of the actors to carry out their purpose, or that they were intercepted or prevented in the perpetration thereof. It should negative the presumption that the actors ceased of their own volition. Bal. Code, § 7437; 1 Wharton, Criminal Law (9th ed.), § 181; *Sipple v. State,* 46 N. J. Law, 197.

It is necessary that both parties to the act of incest have knowledge of their relationship. *Baumer v. State,* 49 Ind. 544 (19 Am. Rep. 691).

In order to sustain its case, it was incumbent on the part of the state to prove to the satisfaction of the jury beyond a reasonable doubt, by competent evidence, that the defendant and the mother of Carrie Barnett were husband and wife. The evidence of the marriage, at most, establishes only a *prima facie* case, and a *prima facie* case does not take away from the defendant the presumption of innocence. Lawson, Presumptive Evidence, p. 445; *Clayton v. Wardell,* 4 N. Y. 230; *Case v. Case,* 17 Cal. 598. In those cases where, as in the case at bar, a marriage must be established in order to establish the guilt of defendant, no presumptions in favor of the regularity of the marriage prevail, but it must be established by com-

petent proof to have been had according to the law of the forum wherein it is alleged to have taken place, by persons competent under such law to enter into the contract. Wharton, Criminal Evidence (9th ed.), § 171; *People v. Lambert,* 5 Mich. 349 (72 Am. Dec. 49) ; *People v. Humphrey,* 7 Johns. 314; *State v. Roswell,* 6 Conn. 446; *Commonwealth v. Jackson,* 11 Bush, 679 (21 Am. Rep. 225) ; *Brown v. State,* 52 Ala. 338; *Buchanan v. State,* 55 Ala. 154; *Hopper v. State,* 19 Ark. 143; *State v. Hodgskins,* 19 Me. 155 (36 Am. Dec. 742).

That the crime of incest is not committed unless the act is done with the mutual consent of both the parties, under a statute containing like provisions with ours, the authorities leave no room for doubt. *People v. Jenness,* 5 Mich. 321; *Delany v. People,* 10 Mich. 241; *De Groat v. People,* 39 Mich. 124; *Baumer v. State,* 49 Ind. 544 (19 Am. Rep. 691) ; *State v. Thomas,* 53 Iowa, 214; *Yeoman v. State,* 21 Neb. 171; *Noble v. State,* 22 Ohio St. 545; *State v. Jarvis,* 20 Ore. 437 (23 Am. St. Rep. 141).

*John W. Mathews,* Prosecuting Attorney (*Hanna & Hanna,* of counsel), for respondent:

An attempt to commit a crime is itself a crime, and if a party proceeds sufficiently far towards the perpetration of a crime to attempt to commit that crime and desists or fails to consummate it, he is nevertheless guilty of the crime of attempting to commit the principal offense. *Lewis v. State,* 35 Ala. 380; *State v. Allen,* 47 Conn. 121; *Pinkard v. State,* 30 Ga. 757; *Taylor v. State,* 50 Ga. 79; *State v. Hayes,* 78 Mo. 307; *State v. Elick,* 7 Jones Law, 68; *State v. Decker,* 36 Kan. 717.

If intent is proven by proving the acts alleged, then the alleging of the acts alleges the intent. *Commonwealth v. Harney,* 10 Metc. (Mass.) 422; *State v. Wright,* 9 Wash. 96; *State v. Womack,* 4 Wash. 19. We ask if the acts

alleged in this information are of themselves innocent or indifferent? Can it be said that the acts alleged in this information do not by their very nature and tendencies carry within themselves the elements of crime—the purpose and intent of the defendant in doing them? As to allegations necessary in indictments for attempts and proof sufficient, see *Lewis v. State,* 35 Ala. 380; *People v. Stites,* 75 Cal. 570; *Griffin v. State,* 26 Ga. 493; *State v. Angelo,* 18 Nev. 425; *Melton v. State,* 24 Tex. App. 284; *Reagan v. State,* 28 Tex. App. 227 (19 Am. St. Rep. 833); *McDade v. People,* 29 Mich. 50; *State v. Johnson,* 19 Iowa, 233.

That the relationship of the actors in incest can be proven by admissions of defendant, and, where the relationship of the actors must depend on the marriage of the father to the mother of the daughter, that such marriage can be proven by other than record or documentary evidence, to-wit, by admission of defendant, by witnesses present at the celebration of the marriage, and by circumstantial and presumptive evidence, see *Nance v. State,* 17 Tex. App. 389; *State v. Schaunhurst,* 34 Iowa, 547; *People v. Imes,* 68 N. W. 157; *Bergen v. People,* 65 Am. Dec. 673; *State v. Hughes,* 57 Am. Rep. 195; *Miles v. United States,* 103 U. S. 304 (26 L. ed. 481).

The opinion of the court was delivered by

GORDON, J.—The defendant appeals from the judgment of the superior court for Whitman county. The information upon which he was tried and convicted is as follows:

" Comes now John W. Mathews, prosecuting attorney and county attorney for the county of Whitman, state of Washington, the court being in session and the grand jury of said county not being in session, and by, this his information accuses Archie McGilvery of the crime of attempting to commit incest with one Carrie Barnett, committed as follows, to-wit: That the said Archie McGilvery and

Carrie Barnett in the county of Whitman, in the state of Washington, on the 9th day of November, eighteen hundred and ninety-seven, then and there being, did then and there wilfully, unlawfully, feloniously and incestuously attempt to carnally know each other by then and there being in bed together, she the said Carrie Barnett, then and there lying and being on her back and he the said Archie McGilvery then and there lying and being on top of her the said Carrie Barnett, and they the said Archie McGilvery and Carrie Barnett, while so lying and being, did then and there have their sexual organs placed together for the aforesaid purpose of carnally knowing each other, she the said Carrie Barnett, then and there being the daughter of one Nancy E. McGilvery, she the said Nancy McGilvery then and there being the wife of him the said Archie McGilvery, she the said Carrie Barnett then and there being the wife's daughter of him the said Archie McGilvery, the said Archie McGilvery then and there having knowledge of the relationship existing between the said Archie McGilvery and the said Carrie Barnett; the said Archie McGilvery and the said Carrie Barnett, then and there being within the degrees of affinity in which marriages are prohibited by the laws of the state of Washington."

The first ground of alleged error is that the trial court was without jurisdiction, for the reason that no preliminary examination of the defendant was had to ascertain whether there was probable cause to believe him guilty of the offense. This point was ruled against defendant's contention in *State v. Williams*, 13 Wash. 335 (43 Pac. 15) ; but we have been urgently requested to reconsider the question, and have done so. Section 6802, Ballinger's Code (2 Hill's Code, § 1204), provides that

"all public offenses may be prosecuted in the superior court by information in the following cases:

" 1. Whenever any person is in custody or on bail on charge of felony or misdemeanor, and the court is in session, and the grand jury is not in session, or has been discharged;

" 2. Whenever an indictment presented by a grand jury has been quashed, and the jury returning the same is not in session, or has been discharged;

" 3. When a cause has been appealed to the supreme court, and reversed on account of any defect in the indictment;

" 4. Whenever a public offense has been committed, and the party charged with the offense is not already under indictment therefor, and the court is in session, and the grand jury is not in session, or has been discharged;

" 5. Whenever the court is in session, or not in session, and any person has been committed by any committing magistrate for any felony or misdemeanor not within the exclusive jurisdiction of a justice's peace court."

The information in the present case alleges that the court was in session and the grand jury not in session, at the time when it was filed, and it is not contended that the defendant was then under indictment; therefore the case would seem to fall under subdivision 4 of § 6802, *supra.* But counsel argue that the prosecuting officer cannot officially know that "a public offense has been committed," unless there has been a preliminary determination of the fact made by some authorized person, or some court of inquiry having power to inquire concerning the accusation; also, that the words of subd. 4, viz., "and the party charged with the offense," are sufficient to indicate that a "charge" or "accusation" must be made prior to the filing of the information. And counsel, with much ability, have argued that to give prosecuting officers authority to cause the arrest of a citizen, and to put him on trial before a jury before such an officer is required to exhibit to the accused any evidence in support of the allegations upon which the charge is based, would be conferring a power dangerous to individual liberty, and subject to great abuse. But we think that experience has demonstrated that such apprehensions are not well founded; and it is not believed that prosecuting attorneys are less to be trusted with the

responsibility of instituting criminal proceedings than
police magistrates or justices of the peace.   The pains-
taking, conscientious prosecutor will never institute a
criminal charge unless he possesses what is believed to be
sufficient competent evidence to establish the guilt of the
party accused.   It is not doubted that a grand jury might
find an indictment where no preliminary examination of
the person indicted has been had, and the indictment
might well be, and frequently is, obtained without the
knowledge of the defendant.   The fact, however, never
has been considered sufficient to prevent a trial upon the
indictment.   The question, and the whole question, is
essentially one of procedure merely.   The constitution of
this state, § 25, art. 1, provides that "offenses heretofore
required to be prosecuted by indictment may be prose-
cuted by information or by indictment, as shall be pre-
scribed by law."   Under this provision, the question of
procedure is left to the legislature; and, if it can be ascer-
tained that the procedure which was adopted in this case
has legislative sanction, it is idle for the courts to concern
themselves with the question of policy involved in the
legislation.   Referring, then, to the question of whether
an information can be legally filed against a person who
is not under indictment or in custody, or on bail, when
the court is in session, and the grand jury of the county
is not in session, it seems to us that subd. 4 of § 6802,
*supra,* contemplates that it may be, and cannot apply to
any other state of facts.   Unless we so interpret it, the
subdivision is meaningless.   If we construe that sub-
division to mean that a preliminary examination of the
accused must precede the filing of the information, we
have the condition contemplated by subd. 1 of the same
section; and subd. 4 becomes superfluous.   This view is
further strengthened by a consideration of subd. 5 of the
section, which provides:   "When a person has been com-

mitted by a magistrate for any felony or misdemeanor,"
etc., whether the court is in session or not at the time it
is filed.    Counsel is in error in supposing that this court
held in *State v. Anderson*, 5 Wash. 350 (31 Pac. 969),
that, before an information could be filed, *both* the fact
that there was no grand jury in session, and also the
further fact that the defendant had had a preliminary
examination, must be shown to exist.    The syllabus to the
opinion in that case does not correctly indicate what was
decided upon that point, the reporter there having used
the copulative "and," instead of the disjunctive "or," in
referring to the two conditions to which the statute relates.
We conclude that the point made by the counsel against
the filing of the information was not well taken.

2. The next contention is that the information does not
charge a public offense, and that the defendant's demurrer
should have been sustained.    In support of this assign-
ment it is urged—First, That the information does not
directly and with certainty charge a purpose or intent to
carnally know each other.    Second, That the information
is bad because it does not allege that the attempt charged
failed in commission because of some inability of the
actors to carry out their purpose, or because they were
prevented or intercepted in the perpetration thereof.    In
other words, it is urged that the information should nega-
tive the presumption that the actors ceased of their own
volition.    And, third, that the information is bad because
it does not allege knowledge on the part of Carrie Barnett
of the relationship between herself and the defendant.
Coming to the consideration of these objections, in the
order in which they are stated, it may, in general, be con-
ceded that an attempt to constitute a crime contains two
elements—an evil intention, and a simultaneous resulting
act, which, if fully performed, would constitute a sub-
stantive crime.    We think that, while an intent to carnally

know each other is not directly averred in the present information, it is the necessary and irresistible inference to be derived from the language that is employed; and, if such be the fact, it meets the requirements of the law in regard to criminal pleading. It charges that they did, at a certain time and place, "wilfully . . . attempt carnally to know each other," and that the acts then described and set forth· in the information were "for the said purpose of carnally knowing each other." We think that a person of ordinary understanding would have no difficulty in discovering from the language of this information that it charged the actors with intending to carnally know each other. Section 6840, Bal. Code (2 Hill's Code, § 1234).

3. We think there is little merit in the contention that the information should negative the presumption that the actors did not cease of their own volition or will before consummating the act of sexual commerce. In *State v. Decker,* 36 Kan. 717 (14 Pac. 283), an information was held sufficient which did not in terms allege that the defendant failed in the perpetration of the principal offense, or that he was prevented or intercepted in its perpetration. Under our statute, § 7436, Bal. Code (Penal Code, § 302), a conviction might lawfully be had for an *attempt* upon proof at the trial, "that the crime intended or attempted was perpetrated by such person in pursuance of such attempt." And, aside from the statute, the rule is well sustained by authority that where a party proceeds far enough in the perpetration of a crime as to clearly indicate his intention, coupled with an attempt to carry it into effect, and thereafter desists or fails to consummate the crime, he may be found guilty of the attempt. Where the elements of an attempt have existed, the subsequent abandonment cannot avail the defendant. 3 Am. & Eng. Enc. Law (2d ed.), p. 269; Wharton, Criminal Law (9th ed.),

§ 187; 1 Bishop, New Criminal Law, § 732; *Lewis v. State,* 35 Ala. 380.

4. The third and last objection to the sufficiency of the information is that it does not allege that Carrie Barnett had knowledge of the relationship existing between herself and the defendant. The information does allege that defendant had knowledge of the relationship, and this is sufficient, under our statute, without alleging that the female also had that knowledge. Section 7229, Bal. Code (Laws 1895, p. 371, § 2). The case of *Baumer v. State,* 49 Ind. 544 (19 Am. Rep. 691), cited and relied upon by the defendant, was based upon a statute which, in this respect, is different from our own.

5. We do not think it was error to sustain the state's objection to the question propounded by defendant's counsel to the witness, Guy Barnett. The witness, upon his direct examination, had testified to the marriage between his mother and the defendant; and, upon cross-examination, defendant's counsel attempted to show a previous marriage between the mother and father of the witness. The objection was sustained, upon the ground that it was not proper cross-examination. And, in a strict sense, the ruling was right. Defendant might have made the witness his own, and examined him in his own defense.

6. It appears that the wife of the defendant was permitted to be present in court during the trial, and this is assigned as error. She was not called as a witness; in fact, the court had refused to permit her name to be indorsed on the information as a witness on behalf of the state; and it is urged by the defendant's counsel that, inasmuch as she was not a competent witness, it was error to permit the attention of the jury to be directed to her. We think there is no force in the objection. It does not appear that she made any demonstration, or was guilty of any improper conduct; and, conceding that she was not a com-

petent witness, she was, nevertheless, an interested person, and entitled, with the permission of the court, to be present during the course of the trial, and the court's refusal to exclude her constituted no proper ground for exception.

7. The next claim of error is, that the crime of incest requires the mutual consent of both parties; and it is further urged, that the evidence at the trial was insufficient to show that the female consented. Upon this branch of the case, it must be conceded that her testimony was somewhat equivocal. But the court charged the jury:

"In the third place, it is alleged in the information, and the law requires it to be alleged in the information, and proven by the testimony introduced upon behalf of the state, that where a person is charged with either incest or an attempt to commit incest, that both parties consented to it. Now, if you are not satisfied as reasonable men, beyond a reasonable doubt, that Carrie Barnett consented to this transaction, then you must resolve that doubt in favor of the defendant and acquit him."

Whether this instruction embodies the correct rule of law, is a question we do not here determine. It certainly was as favorable as the defendant was entitled to; and the objection of the state's counsel that it was an erroneous instruction, and prejudicial to the state's case, cannot be considered upon this appeal. The instruction, even if wrongfully given, was binding and conclusive upon the jury. *Pepperall v. City Park Transit Co.,* 15 Wash. 176 (45 Pac. 743).

In determining the consent or non-consent of Carrie Barnett, the jury were not confined or restricted to a consideration of her testimony alone. They had a right to consider the surrounding circumstances; the fact that there was no outcry or demonstration made by her; that the transaction occurred at a time and place where other members of the family were within easy call. These and many other circumstances, not necessary to be detailed

here, were sufficient to have warranted the jury in finding that the act was with her consent, regardless of her own testimony upon the subject.

8. Lastly, it is urged that the verdict is contrary to the evidence. The contention is, that there is no sufficient evidence of a legal marriage between the defendant and the mother of Carrie Barnett. The record in this case shows that evidence was received at the trial, without any objection made thereto, that a marriage ceremony was performed in a Methodist church at Lewiston, Idaho, by the minister who officiated at such church; that it was in the presence of witnesses, and that the ceremony concluded by his pronouncing them—the defendant and the mother of Carrie Barnett—man and wife after they had, in response to the minister's questions, accepted each other as such; that, following this ceremony, they continued to live and cohabit together as man and wife. And evidence was also given of the defendant's admissions that he sustained the relation of husband to the mother of Carrie Barnett. In the lower court, portions of the statutes of Idaho on the subject of marriage were introduced, from which, among other things, it appears that persons desiring to marry in that state are required to procure a license with certificate attached (Session Laws of Idaho, 1895, p. 166) ; and the certificate is required to be returned by the minister or officer performing the marriage to the office issuing the same, and the return recorded. It is contended by the defendant that the evidence is insufficient, in that no record of the marriage is shown. The evidence we have referred to was all received without objection, and we think it was sufficient to establish a legal marriage. Section 2429 of the Rev. Stat. of Idaho, 1887, is as follows:

" Marriage must be solemnized, authenticated, and recorded as provided in this chapter, *but non-compliance*

*with its provisions does not invalidate any lawful marriage."*

The proof of the performance of a marriage ceremony by an officer authorized to perform it raises a presumption in favor of its legality. *People v. Schoonmaker,* 75 N. W. (Mich.) 439. "The testimony of a witness present at the marriage, is ordinarily admissible and adequate proof, unless the law requires official evidence." Wharton, Criminal Evidence (9th ed.), § 173. See, also, *Miles v. United States,* 103 U. S. 304; *Nance v. State,* 17 Tex. App. 389; *State v. Schaunhurst,* 34 Iowa, 547; 3 Rice, Evidence, § 529.

We have, in this case, the undisputed evidence that a marriage ceremony was performed in a church by a minister who, under the law, was authorized to perform such ceremony, and that the ceremony was followed by the cohabitation of the parties. All that appears to be lacking is, that no previous license was procured, and that no subsequent return of the marriage was made. We think that, under § 2429, *supra,* a failure to procure the license does not render the marriage illegal; and, certainly, the failure of the minister to make a return would not. The objection that the proof of marriage in this case was secondary, is made in this court for the first time. As already noticed, the evidence was received without objection; and, such being the case, it cannot now be urged that the best evidence was not required at the trial.

We think the defendant had a fair and impartial trial; and a careful examination of the record fails to disclose that any reversible error was committed.

Affirmed.

DUNBAR, ANDERS and REAVIS, JJ., concur.