(No. 5443.   Decided July 18, 1905.)

THE STATE OF WASHINGTON, *Respondent,* v. P. H. NELSON,
*Appellant.*[1]

CRIMINAL LAW—ADULTERY—INFORMATION—ERRONEOUS DESIGNA-
TION OF OFFENSE—LIVING IN A STATE OF ADULTERY.   An information
plainly charging the offense of living in a state of adultery, is not
defective on account of a recitation erroneously designating the
offense as the crime of adultery, which is not punishable under
our statutes.

SAME—CERTAINTY.   An information is not uncertain in that it
may charge the offenses of adultery, living in a state of adultery,
cohabitation, or lewdness, when the intent to charge the offense of
living in a state of adultery is plain to a person of common under-
standing.

SAME.   Such an information is not bad for duplicity.

SAME—PARTIES DEFENDANT.   In a prosecution for living in a
state of adultery, it is not necessary to join the alleged paramour
as a defendant.

SAME—CERTAINTY AS TO TIME.   An information for living in a
state of adultery, charging the commission of the crime between
certain dates, is not uncertain as to time.

CRIMINAL LAW—ORDERS—RECITALS—COPY OF INFORMATION.   An
order of arraignment reciting the delivery of a copy of the infor-
mation cannot be contradicted by *ex parte* affidavits.

SAME—ADULTERY—EVIDENCE OF PREVIOUS ACTS.   In a prosecution
for living in a state of adultery, the conduct of the parties previous
to the date charged may be shown.

SAME—MARRIAGE OF PARAMOUR—HARMLESS ERROR.   In a prose-
cution for living in a state of adultery, the state has a right to prove
the marriage of the alleged paramour and the absence of her hus-
band, as part of the surrounding circumstances; and if the marriage
was immaterial, it was not prejudicial.

SAME — ADULTERY OF PARAMOUR — BIRTH OF CHILD — HARMLESS
ERROR.   In a prosecution for living in a state of adultery with a
married woman, it is competent for the state to prove that she
gave birth to a child more than twenty months after she had seen
or cohabited with her husband, as one step toward proving the
ultimate fact of adultery with the accused; and if he was not
connected therewith he was not prejudiced.

[1]Reported in 81 Pac. 721.

SAME—MARRIAGE—EVIDENCE OF—COMPETENCY.   Testimony tending to show a marriage by a minister of the gospel, that the parties then promised to take each other as husband and wife, and continually lived together and held themselves out as such, is competent proof of a marriage; the statutory provision for proof by certificate being cumulative.

TRIAL — OBJECTIONS TO TESTIMONY — SUFFICIENCY — APPEAL AND ERROR—REVIEW.   Where it is sought to qualify a former wife as a witness by showing a divorce, an objection that evidence offered to prove the divorce was "incompetent, irrelevant and immaterial," does not raise the objection that it was not the best evidence, and will not be entertained for the first time in the supreme court.

WITNESSES—COMPETENCY—DIVORCED WIFE.   The divorced wife of the accused is a competent witness against him, except as to communications during marriage.

SAME—HUSBAND OF PARAMOUR—ADULTERY—EVIDENCE.   The husband of the alleged paramour of the accused is a competent witness against one accused of living in a state of adultery, when the paramour is not on trial or charged with crime.

SAME—ADULTERY—EVIDENCE—LETTERS OF PARAMOUR TO HUSBAND— LOSS OF PRIVILEGE—IMPEACHMENT OF WITNESS.   Where an alleged paramour was offered as a witness to prove that she had not lived in a state of adultery with the accused, a letter written to her husband, inconsistent with her testimony, loses its character as a privileged communication when it is produced by the officers of the state, and is competent for the purposes of impeachment.

Appeal from a judgment of the superior court for King county, Hatch, J., entered July 5, 1905, upon a trial and conviction of the crime of living in a state of adultery. Affirmed.

*James E. Bradford,* for appellant.

*Kenneth Mackintosh* and *Hermon W. Craven,* for respondent.

RUDKIN, J.—The defendant was convicted of the crime of living in a state of adultery, and prosecutes an appeal from the judgment and sentence of the court.  The information recites that the appellant is accused of the crime of adultery committed as follows ·

"He, the said P. H. Nelson, in the county of King, State of Washington, on the 25th day of May, 1903, and thence

continuously until about the 15th day of July, 1903, did wilfully, unlawfully and feloniously live and cohabit in an open and notorious state of adultery with one Paulina Smith, and did then and there have carnal knowledge of the body of the said Paulina Smith, the said Paulina Smith being then and there a female person other than the wife of the said P. H. Nelson, and being then and there the lawful wife of Barney Smith, then and there living in Alaska, and the said P. H. Nelson having then and there a lawful wife living in Seattle, King county, Washington, to wit: one Julia Nelson."

The appellant urges several objections to the sufficiency of this information.

(1) It is claimed that the information charges the crime of adultery, and that there is no such crime under the laws of this state. True, the information recites that the appellant is accused of the crime of adultery, but the sufficiency of an information does not depend upon the name by which the prosecuting officer may designate the crime. A wrong designation of the crime charged, or the absence of all designation, will not vitiate an information which is otherwise sufficient. The information before us plainly charges the crime of living in a state of adultery under Bal. Code, § 7231, and is therefore sufficient.

(2) It is claimed that it is uncertain whether the information charges a crime under Bal. Code, § 7230, § 7231, or § 7238. Section 7230 defines adultery, but does not define any crime or prescribe any penalty. Section 7231 defines the crime of living in a state of adultery. Section 7238 defines the crime of lewd and vicious association and cohabitation by unmarried persons, or open and gross lewdness or indecent or obscene exposure of his or her person, or of the person of another, by any man or woman married or unmarried. It seems to us a person of common understanding can readily understand what is intended by this information and what crime is charged. If so, the requirements of the law are satisfied.

(3)  It is claimed that Paulina Smith should have been joined as a defendant. This was unnecessary. Bishop, Statutory Crimes (3d ed.), § 670; Wharton, Crim. Law (10th ed.), § 1730; 1 Ency. Plead. & Prac., p. 308; *State v. Dingee,* 17 Iowa 232.

(4)  It is urged that the information is uncertain as to time. Where an information charges a continuing offense, such as living in a state of adultery, it is proper to allege the commission of the crime between certain dates as was done in this case. *State v. Way,* 5 Neb. 283; *Commonwealth v. Wood,* 4 Gray 11.

(5)  Again it is urged that the information is bad for duplicity. This assignment is answered by what has been said as to uncertainty as to the crime charged, as is also the further assignment that the court should have required the state to elect between the different crimes charged. As we view the information it charges but one crime in one form only.

(6)  It is claimed that the appellant was not furnished with a copy of the information. The order of arraignment recites that a certified copy of the information was delivered to the appellant in open court and this record cannot be contradicted by an *ex parte* affidavit.

(7)  It is assigned as error that the court admitted testimony relating to the conduct of the appellant and his alleged paramour three months prior to the date alleged in the information. In this class of cases such testimony is always competent. Underhill, Crim. Evid., p. 444; *State v. Wood,* 33 Wash. 290, 74 Pac. 380.

(8)  It is assigned as error that the court admitted evidence of the marriage of Paulina Smith, and that such evidence was incompetent and immaterial. The competency of this testimony we will consider hereafter. If immaterial, it is not prejudicial. Furthermore, the state had the right to prove all the surrounding circumstances, including the

fact that Paulina Smith was married and that her husband was absent in Alaska.

(9)   It is assigned as error that the state was permitted to cross-examine its own witness, that the state's witnesses were allowed to repeat their testimony and that the court admitted evidence of conversations held in the absence of the appellant.   The record furnishes no basis for these assignments.

(10)   It is assigned as error that the court admitted evidence tending to show that Paulina Smith gave birth to a child early in the year 1904.   It appears that the husband of Paulina Smith was continually absent in Alaska from the month of May, 1902, until the month of September, 1903.   Notwithstanding the absence of her husband and the good reputation for virtue and chastity which she established at the trial, the fact seems to remain that she gave birth to a child more than twenty months after she had seen or cohabited with her husband.   The state could not prove its entire case at once.   The fact that Paulina Smith committed adultery with some person was a circumstance the state had a right to prove.   If the appellant was not connected therewith, he was not prejudiced thereby.   If he was connected therewith, it established adultery on his part at least, and this was an important step toward proving the ultimate fact of living in a state of adultery.   *State v. Wood, supra; State v. Fetterly,* 33 Wash. 599, 74 Pac. 810.

(11)   It is next assigned as error that there was no competent proof of a marriage between the appellant and Julia Nelson, his alleged wife.   The testimony offered tended to show that the appellant and said Julia Nelson were married by a minister of the gospel in the territory of Dakota in the year 1883; that in the presence of the minister and of witnesses they promised to take each other as husband and wife, and that the minister then declared them to be such. The testimony further shows that they lived together con-

15—39 WASH.

tinually thereafter as husband and wife and held themselves out as such. Under all the authorities this was competent proof of marriage. Bal. Code, § 7232, cited by appellant, provides for proof of marriage by a recorded certificate of the marriage or a certified copy thereof, but this method is cumulative and does not exclude other methods of proof. 19 Am. & Eng. Ency. Law (2d ed.), 1197; Wharton, Crim. Evid., § 173; Underhill, Crim. Evid., p. 445; *People v. Stokes,* 71 Cal. 263, 12 Pac. 71; *Summerville v. Summerville,* 31 Wash. 411, 72 Pac. 84; *In re McLaughlin's Estate,* 4 Wash. 570, 30 Pac. 651, 16 L. R. A. 699; *State v. McGilvery,* 20 Wash. 240, 55 Pac. 115. In the last case cited this court says:

"The proof of the performance of a marriage ceremony by an officer authorized to perform it raises a presumption in favor of its legality. *People v. Schoonmaker,* 75 N. W. (Mich.) 439. 'The testimony of a witness present at the marriage, is ordinarily admissible and adequate proof, unless the law requires official evidence.' Wharton, Criminal Evidence (9th ed.), § 173. See, also, *Miles v. United States,* 103 U. S. 304; *Nance v. State,* 17 Tex. App. 389; *State v. Schaunhurst,* 34 Iowa, 547; 3 Rice, Evidence, § 529."

(12) After the commission of the acts of adultery charged in the information, Julia Nelson obtained a divorce from the appellant. The appellant in this court objects to her competency as a witness against him on the ground that there was no competent proof of a divorce. The respondent, on the other hand, contends that she was a competent witness, whether divorced or not, as the crime of living in a state of adultery on the part of the husband is a crime against the wife, and therefore by the express terms of the statute she is rendered competent. Whether the wife is a competent witness against the husband in a prosecution of this kind is an important question upon which the authorities are divided, and we do not find it necessary to decide the ques-

tion on this appeal. Testimony was offered and received to the effect that Julia Nelson was not the wife of the appellant at the time of the trial, and that they had been divorced. The only objection interposed to this testimony was after the testimony was in and upon the ground that the testimony was "incompetent, irrelevant, and immaterial." This objection was not sufficient to raise the question that a certified copy of the decree of divorce was the best evidence of the fact that a divorce had been granted. 8 Ency. Plead. & Prac., 226; *Kenosha Stove Co. v. Shedd*, 82 Iowa 540, 48 N. W. 933; *Guarantee Loan & T. Co. v. Galliher*, 12 Wash. 507, 41 Pac. 887; *Price v. Scott*, 13 Wash. 574, 43 Pac. 634; *Sackman v. Thomas*, 24 Wash. 660, 64 Pac. 819.

An objection of this kind will not be entertained for the first time in this court. Had this particular objection been called to the attention of the trial court, it might readily have been obviated by producing the decree of divorce, which was apparently on file in the same court. Julia Nelson was, therefore, a competent witness against the appellant, except as to communications made by one to the other during marriage, and it is not claimed that any such communications were offered or received. 30 Am. & Eng. Ency. Law (2d ed.), 950; Wharton, Evidence (3d ed.), § 429; Greenleaf, Evidence (16th ed.), § 337; *Inman v. State*, 65 Ark. 508, 47 S. W. 558; *People v. Marble*, 38 Mich. 117; *Chamberlain v. People*, 23 N. Y. 85, 80 Am. Dec. 255.

(13) It is next urged that Barney Smith, the husband of Paulina Smith, the alleged paramour of the appellant, was not a competent witness against the appellant. Paulina Smith was not on trial, or charged with crime, and this objection is not tenable. Underhill, Crim. Evid., p. 234; Wharton, Crim. Evid. (9th ed.), § 396. A witness cannot be said to be examined for or against one who is not a party to the proceeding. *People v. Langtree*, 64 Cal. 256, 30 Pac. 813.

(14) Paulina Smith was offered as a witness by the appellant, and denied that she ever had intercourse, or lived in a state of adultery, with him. For the purpose of impeachment, the state offered in evidence a letter written by the witness to her husband in Alaska, which it was claimed contained certain admissions inconsistent with her testimony at the trial. This was objected to, on the ground, among others, that it was a communication between husband and wife and therefore incompetent. This letter was produced and offered in evidence by the officers of the state, and had therefore lost its character as a privileged communication. Underhill, Crim. Evid., p. 234; Wharton, Crim. Evid. (9th ed.), 398; *State v. Hoyt,* 47 Conn. 518, 36 Am. Rep. 89; *State v. Buffington,* 20 Kan. 599, 27 Am. Rep. 193; *People v. Hayes,* 140 N. Y. 484, 35 N. E. 951, 37 Am. St. 572, 23 L. R. A. 830.

Appellant contends that the letter was not competent evidence as against him, but it was not offered for that purpose. It was offered for the purpose of contradicting his main witness on the question of the relations existing between her and the appellant, and her testimony as to such relations was certainly material. In view of the statements attributed to both the appellant and her alleged paramour by a number of the witnesses, we think the letter, though somewhat enigmatical, was competent to go before the jury.

We have examined the instructions given and the requests refused, and are satisfied that the law was fairly and cor-. rectly given to the jury, and that the substance of the appellant's requests, so far as proper or material, was embodied in the charge of the court. Owing to the length of this opinion, we must decline to review the testimony on this appeal further than to say that we have carefully considered it, as well as all the errors assigned; and, after such consideration, we fell satisfied that every right of the accused

was carefully safeguarded by the court below, and that the verdict is fully sustained by the evidence.

The judgment is therefore affirmed.

MOUNT, C. J., FULLERTON, HADLEY, CROW, and DUNBAR, JJ., concur.

ROOT, J., concurs in the result.