[Nos. 14497, 14498.   Department Two.   May 11, 1918.]

# D. C. THIEMENS, *Appellant*, v. C. T. SANDERS, *as Auditor of Grant County, Respondent*.

# J. C. WHITE, *Appellant*, v. C. T. SANDERS, *as Auditor of Grant County, Respondent*.[1]

OFFICERS—RECALL—PETITION—SUFFICIENCY — CONSTITUTIONAL AND STATUTORY PROVISIONS. Under Const., amend. 8, art. 1, § 33, authorizing the recall of an elective officer for malfeasance or misfeasance in office, and Rem. Code, § 4940-1, requiring the charge to state the acts complained of in concise language, a charge against a county commissioner stating in detail facts showing a malfeasance in office by the violation of Rem. Code, § 2334, which makes it a gross misdemeanor to be beneficially interested in a contract to purchase lands for the county, is sufficient, although the charge is of misfeasance rather than malfeasance; since an incorrect designation of the offense would not invalidate the recall petition.

SAME. Under Rem. Code, § 4940-8, requiring petitioners for the recall of an elective officer to file a statement giving the names and addresses of all persons who have contributed or aided and the amount contributed by each, and a detailed statement of all expenditures, the county auditor must file a statement if duly verified, without investigating its truth; and that there are a number of names without cash contributions does not invalidate the petition.

Appeal from a judgment of the superior court for Grant county, Mitchell, J., entered September 24, 1917, dismissing consolidated actions for injunctive relief, tried to the court. Affirmed.

*Daniel T. Cross, C. G. Jeffers, Wm. M. Clapp,* and *Bausman & Oldham* (*Don. G. Eggerman,* of counsel), for appellants.

*W. E. Southard, T. B. Southard, C. J. Lambert,* and *N. W. Washington,* for respondent.

MOUNT, J.—These two actions were brought to enjoin the county auditor of Grant county from calling

[1]Reported in 173 Pac. 26.

an election for the recall of the plaintiffs as county commissioners of that county. After a trial, the lower court dismissed both actions. The plaintiffs have appealed.

The issues in the two cases are practically identical. They were tried together in the lower court, and, by stipulation filed in this court, are to be considered upon the same record and briefs.

It is contended by the appellants that the court erred in dismissing the actions; because, first, the petitions filed against the appellants are insufficient; and second, the statement of receipts and expenditures did not comply with the statute.

The charges preferred against the commissioners were made by a committee of taxpayers. These charges, in relation to Mr. Thiemens, were stated in the petition substantially as follows:

First, that Mr. Thiemens was guilty of "misfeasance," in that he, acting with J. C. White, one of the other commissioners—they then and there constituting a majority of the board—passed a resolution of such board to construct a courthouse for Grant county on block eleven (11) of the Third addition to the town of Ephrata, and to authorize the purchase of said block eleven (11) for the purpose of erecting thereon the said courthouse; that this resolution authorized Thiemens, the chairman of the board of county commissioners, to purchase the lots constituting said block eleven (11) at certain stated prices, among which lots were numbers 6 to 13, inclusive, which were authorized to be purchased for the sum of $3,500; that an undivided one-half interest, though not of record, belonged to commissioner Thiemens; that Thiemens has, therefore, been guilty of misconduct as a public officer, in that he is beneficially interested in the sale of these lots to Grant county; and that, under this resolution,

the auditor of Grant county was directed to draw a warrant forthwith to pay for the lots.

Second, that Thiemens committed a further act of misfeasance in his office, in that, with J. C. White, he did, between January 12, 1917, and April 17, 1917, wilfully conspire to cast their several votes in favor of the resolution authorizing the purchase of block eleven (11), though both Thiemens and White knew that Thiemens was the real owner of an undivided one-half interest in lots 6 to 13, inclusive; that the sum of $3,500, proposed to be paid for these lots, was largely in excess of their true value; that, as a part of this conspiracy, Thiemens and White agreed that they should keep secret from the other member of the board, T. H. Twining, their intention to pass this resolution until it was "sprung upon him;" that White and Thiemens further conspired that this resolution should be passed in such a way as to enable Thiemens to close the transaction before the taxpayers of the county would have knowledge of the agreement or an opportunity to prevent its being carried into effect; that Thiemens and White also agreed that the resolution should be passed in a manner so as to direct the county auditor to forthwith issue warrants for the purchase of the lots, in violation of the statutes of this state providing that county warrants shall not be issued until ten days have expired after the date of their allowance; that, in pursuance of this agreement, Thiemens and White, as members of the board of county commissioners, did, on April 17, 1917, produce a resolution having the foregoing effect, and Thiemens then and there stated to White in the presence of Twining: "We might as well spring the white elephant on Tommy," meaning Twining, and that the resolution was passed by Thiemens and White without Twining

having an opportunity to consider the question or discuss it, or view the property to ascertain its value, or to become advised concerning whether property of equal suitability could be obtained for less money, or more advantageously to the interests of the county; that this resolution fixed the value of lots 6 to 13 in the sum of $3,500; that it authorized Thiemens to purchase the property at the amount fixed in the resolution, and directed the auditor of Grant county to draw warrants for the respective amounts and tender to the respective parties owning the said lots the total purchase price of said lots in the block, being $10,600 without the building on lots 1 and 2, or $10,900 with the building, either of which amounts is clearly in excess of the real or marketable value of the lots; and that this resolution was purposely and designedly passed late in the afternoon, immediately before the end of the session of the board then being held, and was the last business performed by the board before its adjournment on April 17, 1917.

In the petition for removal there are also charges of nonfeasance and of violation of the oaths of office of these commissioners in several respects. We think it is unnecessary to set out the petition further.

It is first argued by the appellants that these charges were insufficient because they attempted to charge misfeasance but do not do so. The constitutional provision with reference to the recall of public officers is as follows:

"Every elective public officer . . . except judges . . . is subject to recall . . . whenever a petition demanding his recall, reciting that such officer has committed some act or acts of malfeasance or misfeasance while in office, or has violated his oath of office, stating the matters complained of, . . . is filed . . ." Const., amendment 8, art. 1, § 33.

Section 4940-1, Rem. Code, provides as follows:

"Whenever any . . . committee . . . shall desire to demand the recall and discharge of any elective public officer . . . they shall prepare a typewritten charge, reciting that such officer, naming him and giving the title of his office, has committed an act or acts of malfeasance, or an act or acts of misfeasance while in office, or has violated his oath of office, . . . which charge shall state the act or acts complained of in concise language, without unnecessary repetition, . . ."

Section 4940-3, Rem. Code, provides that

". . . the officer with whom the charge is filed shall formulate a ballot synopsis . . . which shall set forth . . . a concise statement of the elements of the charge, . . ."

It will be noticed that the constitution and the statute provide, in substance, that when a public officer "has committed some act or acts of malfeasance or misfeasance while in office, or has violated his oath of office," he is subject to be recalled.

It will also be noticed that the petition filed with the county auditor of Grant county recites that the appellants have been guilty of misfeasance, and then the acts done are set forth. It is not seriously contended by the appellants that the act or acts set forth in the petition do not constitute malfeasance, but it is argued that they do not constitute misfeasance, and, for that reason, the petition for the recall of the commissioners is insufficient. As we read the briefs on the part of the appellants, it is not contended that these acts are not acts of malfeasance. They clearly are such under the statute (§ 2334, Rem. Code), which provides that:

"Every public officer who shall . . .

"(2) Be beneficially interested, directly or indirectly, in any contract, sale, lease or purchase which may be made by, through or under the supervision of

such officer, in whole or in part, or which may be made for the benefit of his office, or accept, directly or indirectly, any compensation, gratuity or reward from any other person beneficially interested therein; . . .

"Shall be guilty of a gross misdemeanor, . . ."

It is apparent that, if these commissioners were the owners of the lots named in the charge, or beneficially interested therein, and were attempting to, and did, sell the same to the county of which they were the commissioners, which sale was made by these officers for their benefit, they were no doubt guilty of a gross misdemeanor under the law. We think there can be no doubt of the sufficiency of the petition in this respect, and that it charges malfeasance in office. The mere fact that the petition recited that these officers were guilty of misfeasance instead of malfeasance has no merit, because the statute and the constitution require the act or acts done to be stated in plain and concise language. Even if the rule in criminal pleadings must be followed in these petitions, we are satisfied that an incorrect designation of the offense would not invalidate a petition. This court has held that the misnomer of a crime would not vitiate an information otherwise sufficient to charge a crime. *State v. Nelson*, 39 Wash. 221, 81 Pac. 721.

Without further considering the other charges in the petition we are satisfied that the one already mentioned is sufficient upon which to base a recall election.

It is next argued that the statement of the receipts and expenditures does not comply with the law. The statute (Rem. Code, § 4940-8) provides that:

"At the time of submitting such petition the person, committee or organization submitting the same shall file with the officer to whom such petition is submitted a full, true and detailed statement, giving the names and postoffice addresses of all persons, corporations and organizations who have contributed or aided in the

preparation of the charge and in the preparation and filing of the petition, with the amount contributed by each, and a full, true and detailed statement of all expenditures, giving the amounts expended, the purpose for which expended and the names and postoffice addresses of the persons and corporations to whom paid, which statement shall be verified by the affidavit of the person or some member of the committee or organization making the charge, and until such statement is ·filed the officer shall refuse to receive such petition.''

The statement of receipts and expenditures contained the names of 135 persons with their postoffice addresses, and with the amount of cash contributed by each; it also contained the names of about 60 persons with their postoffice addresses, but it does not state what these persons contributed. The statement also contains the names and addresses of the persons to whom the money was disbursed, with a detailed statement of the purposes of the expenditures. These statements are properly verified. No question is made upon the regularity of the verification; but it is contended by the appellants that there were a number of persons who contributed money who were not designated in the statement. It is also contended that, because there are a number of names without cash contributions, the statement is insufficient under the statute. In the case of *State ex rel. McCauley v. Gilliam,* 81 Wash. 186, 142 Pac. 470, we held that the county auditor was not authorized to file a petition for a recall where the statement of expenses and disbursements was not verified as required by law. But the statement of receipts and expenses in this case is properly verified. The county auditor, with whom the statement was filed, is not authorized to investigate the items of receipts and disbursements in order to determine its correctness. He must rely upon the affidavit of the person or persons who verify the statement, which, if properly verified,

required him to file the petition and call an election. *State ex rel. Case v. Superior Court*, 81 Wash. 623, 143 Pac. 461, Ann. Cas. 1916B 838.

If the person verifying such statement makes false verification he is amenable under the criminal law. We are satisfied that the statement complied with the statute, and the defects shown did not require the county auditor to refuse to file the statement, or the petition, or to call an election.

Upon a consideration of all the facts in the case as shown by the record, the trial court properly denied the injunction. The judgment is therefore affirmed.

ELLIS, C. J., HOLCOMB, CHADWICK, and MAIN, JJ., concur.