## STATE *versus* CHIPMAN HODGSKINS.

It is not sufficient evidence of marriage, in a criminal prosecution, to prove that the ceremony was performed — and that cohabitation for a long period followed — without showing that the person by whom it was so performed was clothed with the requisite authority for that purpose.

In criminal prosecutions a marriage in fact, as distinguishable from one inferable from circumstances must be proved.

THIS was an indictment for adultery with one Deborah Hodgskins. To prove the marriage of the defendant, the Attorney General called Priscilla Tripp, who testified that Chip-

man Hodgskins was her brother — that she was present when he was married to Abigail Thurlow at the house of her father, Richard Thurlow. She could not state how long ago they were married, but should think it was about twenty-five years ago. She could not state by whom they were married. Hodgskins continued to live with the aforenamed Abigail, until about eight years ago, and had nine children by her, before they separated.

There was evidence tending to prove the commission of the offence charged.

Upon this evidence, SHEPLEY J. who presided at the trial, instructed the jury, that they had evidence of the reputed marriage of the defendant; a sister of the defendant had testified that about twenty-five years ago she was present at the cere- mony of marriage between the defendant and one Abigail Thurlow, with whom the defendant had lived from that time until within about eight years, and had children by her, — who married them the witness did not know. That being the evidence of the marriage, the jury must judge of it — that twenty-five years ago, before the separation of Maine from Massachusetts, ordained ministers of the gospel, and justices of the peace, having been authorized by law to solemnize marriages, they were to judge upon the evidence, whether a person authorized to solemnize marriages, performed the ceremony. If satisfied of that fact, the jury were then to judge from the evidence, whether at any time within six years before the finding of this indictment the defendant had had carnal knowledge of Deborah Hodgskins at any place within the county, &c.

The jury returned a verdict of guilty, and the defendant filed exceptions to the rulings and instructions of the judge.

*A. Haines,* for the defendant.

*Attorney General,* contra.

The opinion of the Court was delivered by

WHITMAN C. J. — The indictment against the prisoner contains a charge of the crime of adultery. Two exceptions are taken to the proof in support of it. The first is, that the

evidence of the marriage of Hodgskins was insufficient. A witness testified that she saw the ceremony performed; but cannot tell by whom, and gave no description of the person performing it, whereby his official character could be indicated. This evidence was accompanied by proof of cohabitation, between the parties, immediately following the performance of the ceremony, till they had nine children. Was this sufficient to authorize the finding of the fact of marriage? It is indispensable that this fact should be proved; and the proof of it must be such as the law, in the particular case requires. Different cases, in which the proof of a marriage is made requisite, require different evidence. In settlement cases, and some others, reputation and cohabitation, in some instances, have been deemed sufficient. But in civil actions, for criminal conversation, and an indictment for bigamy, it has been held in England, that a marriage in fact must be proved. 4 Burrow, 2059. In that country the common law courts have not cognizance of the crime of adultery. We have from thence therefore no adjudged cases on this point, in reference to that particular crime. But the crime of bigamy is an offence of the same grade; and the rule as to the proof of marriage must be the same in both. The proof of a marriage in fact is in contra-distinction to proof inferable from circumstances.

This rule, as to proof of marriage in fact, is considered as having been somewhat modified by the decision in a case cited in 1st of East's P. C. 470. That was an indictment for bigamy. In addition to the proof of reputation and cohabitation, till after the birth of a number of children, it was proved, that, in a judicial proceeding in Scotland, the prisoner had signed a a paper, containing a full acknowledgement of his marriage, a copy of which was produced. Upon this evidence the court are stated to have adjudged the proof sufficient; and some of the judges were of opinion, that the confession so made would have been alone sufficient. It is a well settled principle of law that confessions, if made deliberately and understandingly, and against the interest of the party making them, are the best evidence that can be expected. But there are numerous excep-

tions to this rule, arising from policy or other considerations. If there be a subscribing witness to a simple note of hand the confession of the maker, that he signed it cannot be proved till it shall be made apparent that the subscribing witness cannot be produced ; and this rule is still more pertinaciously adhered to in reference to instruments of a higher nature.

But the supreme court in this state has so far yielded to the modification of the ancient rule, in conformity to the opinion of some of the judges in the case last cited, as to de-termine, in cases of adultery, that the confession of the adul-terer, deliberately and understandingly made, of his marriage, shall be admissible, and be considered *prima facie* evidence of the fact. 7 Greenl. 57, *Cayford's* case, and 2 Fairf. 391, *Harris'* case. Before arriving at this result chief justice Mel-len went into an elaborate course of reasoning to establish the reasonableness of it. Thus far, and no further, have the courts gone in dispensing with direct proof of the fact of marriage in such cases.

The question now is, can we consider the proof of the marriage, in the case at bar, as proof of a marriage in fact ; for the case does not contain any evidence of a confession of it. It should be with great caution that innovation should be resorted to in reference to the rules of evidence, as well as in relation to all other rules of law. It is not unfrequently the case, that it would be better to leave, undisturbed, a rule, which has been long in use, so as to become familiarly known, and to which our habits have become adapted, and in some meas-ure fixed, even if, abstractly considered, it should be demon-strable, that, in lieu of it, some other rule would have been preferable.

If, in cases like the present, the rule formerly was, that a marriage in fact should be proved, by which, it is to be under-stood, that it should be by some person present at the perform-ance of the ceremony, or by the production of the record of the marriage, and the only modification of that rule, as yet recognized, is the admission of proof of the confession of the fact by the prisoner, deliberately and understandingly made, we

must look to the evidence, and see whether it comes fairly within either of those rules.

The proof here is by a person, who was present at the performance of a marriage ceremony, between the prisoner and his supposed wife at her father's house. But the witness cannot tell who performed that ceremony; nor whether it was by a clergyman or magistrate or any other person. The object of requiring the testimony of a person present at the marriage is not merely to prove the performance of the ceremony by some one; but to prove that all the circumstances attending it were such as to constitute it a legal marriage. There should be something disclosed, by which it may satisfactorily appear, that the person performing the ceremony was legally clothed with authority for the purpose. In the case of the indictment against *Norcross*, 9 Mass. R. 492, it was proved, that the ceremony was performed by Doctor Morse, of Charlestown, a person well known as being an ordained clergyman, in that town, and as such having authority to solemnize marriages. No question was made but that he was so authorized. No objection therefore was made to the proof in this particular; but it was insisted, that it should have been by the record of the marriage, but this the court overruled.

In a settlement case in England, *Rex* v. *the Inhabitants of Frampton,* 10 East, 282, the proof of the marriage of the pauper was strenuously contested upon the ground, that it did not appear to have been solemnized by a person having authority for the purpose. There was evidence of his cohabitation with his supposed wife for eleven years, and of the birth of children during that time. This alone seems not to have been regarded, in that case, as sufficient; possibly because there was the want of evidence of reputation in regard to it. However this may be, it seems to have been deemed necessary to produce further evidence of the fact of a marriage. Accordingly a witness was produced, who testified, that the husband of the pauper was a soldier in the British army, at St. Domingo, and that while so there, he saw him married in a chapel there, by a person there officiating as a priest, and in the habiliments

of one ; that the ceremony was in French but was interpreted to the parties in English ; and appeared to be in conformity to the marriage service in England.  Lord Ellenborough, and the other Judges of the King's Bench, in that case, considered, that there was evidence of a marriage by a person so described, that it was reasonable to believe, that he had authority for the purpose, and that the marriage was valid ; it having been followed by cohabitation and the birth of children between the parties.

If such proof could be deemed essential in a settlement case, à fortiori, something, at least equivalent would seem to be requisite in a criminal prosecution for a heinous offence.  In the case at bar the proof is much short of what seems to have been supposed to be necessary in that case.  There then is not the slightest indication in the testimony, of any authority for the purpose, on the part of the person, who performs the ceremony.  5 Wendell, 231 ; Green & al. v. Gridley, 10 Wend. 254 ; Greenl. on Evidence, § 83, 92 ; Damon's case, 6 Greenl. 148.  A marriage in fact therefore, as contra-distinguished from one inferable from circumstances, is not proved.  And there being no evidence of a confession of the fact, by the prisoner, we think the exceptions must be sustained, and a new trial granted. It is unnecessary, therefore, to consider the other exceptions taken by the prisoner.