THOMAS BAILEY v. STATE OF NEBRASKA.

FILED APRIL 26, 1893.   No. 4518.

1. **Information:** DEFECT IN VERIFICATION: WAIVER. A defect in the verification of an information is waived by pleading to the information.

2. **Marriage:** VALIDITY: PROOF. Marriage is a civil contract requiring in all cases for its validity only the consent of parties

capable of contracting.    The fact of marriage may be proved by
the testimony of one of the parties.

3. **Adultery:** EVIDENCE.    Where a defendant is charged with
adulterous cohabitation while living with his wife, proof of such
adulterous cohabitation during any portion of the period laid in
the information is sufficient to sustain the charge.

4. ———: ———.    A single act of adultery at a time outside of the
period of adulterous cohabitation thus proved is a separate of-
fense, for which the defendant may be punished, although com-
mitted within the period of adulterous cohabitation laid in the
information.

5. ———: MARRIAGE WITHOUT SOLEMNIZING OFFICER: PROOF:
NEWLY DISCOVERED EVIDENCE: NEW TRIAL.    In a prosecu-
tion for adultery the only evidence of defendant's marriage was
that of the complaining witness, the woman alleged to be de-
fendant's wife.    The marriage relied upon was by words of con-
sent without the presence of a solemnizing officer or of witnesses.
A new trial was asked on the ground of newly discovered
evidence, the affidavits removing every question of negligence in
procuring the evidence.    The newly discovered evidence alleged
consisted of the declaration of the complaining witness contra-
dicting her testimony as to the marriage.    *Held,* That under
these circumstances the motion should have been sustained.

6. **Motion for New Trial:** NEWLY DISCOVERED EVIDENCE.    A
motion for a new trial should be granted on the ground of newly
discovered evidence tending to impeach a witness by showing
declarations contradicting his testimony, where such evidence is
of so controlling a character that it would probably change the
verdict.

ERROR to the district court for Seward county.    Tried
below before NORVAL, J.

*Norval Bros. & Lowley,* for plaintiff in error.

*George H. Hastings, Attorney General,* for the state.

IRVINE, C.

The plaintiff in error was informed against in three
counts, the first charging him with deserting his wife, Ma-
tilda Bailey, on the 1st day of January, 1887, and from

that day until March 1, 1888, living and cohabiting with one Della Brong in a state of adultery. The second count charges him with committing adultery with Della Brong on February 18, 1888; the third, with keeping Della Brong and wantonly cohabiting with her in a state of adultery from November 7, 1886, to March 1, 1888, while being with his lawful wife, Matilda Bailey. He was acquitted upon the first count and found guilty upon the second and third. The sentence was that plaintiff in error should pay a fine of $200 and be committed to the county jail for the period of three months upon the second count, and also that he pay a fine of $200 and be committed for a like period upon the third count.

1. The first question presented relates to the sufficiency of the information, which was verified by the oath of Matilda Bailey before a notary public in Lancaster county. It is urged that a valid oath is essential to an information, and that the district court acquired no jurisdiction under an information not verified before a magistrate. There can be no doubt that a verification before a notary public is insufficient (*Richards v. State*, 22 Neb., 145), but this was a defect open merely to a motion to quash and was waived by pleading to the information. It was not jurisdictional. (*Davis v. State*, 31 Neb., 252.)

2. The next point urged is that there was not sufficient evidence to establish a marriage between plaintiff in error and Matilda Bailey, who is alleged in each count to be his lawful wife. It appears that plaintiff in error and Matilda Bailey, then known as Mrs. Tyson, met at Lyons, Iowa, in 1866, plaintiff in error going to the house of Mrs. Tyson to board. They lived together in Lyons until about 1869, when they came to Nebraska together and soon after took up a homestead. They seem to have lived together until 1887, when Matilda left him. One child, still living, was born to them. Matilda testifies in one place that plaintiff in error came to board and "promised that he would be

my husband and I should be his wife as long as we lived. He promised to be true to me." Again : "He said he would be true to me; that if he married me he couldn't be truer to no one than he would be to me, and that it was just as good as to go and get married." Again :

Q. Will you state to this jury how you were married?

A. Yes, sir.

Q. How?

A. Why, he promised that he would be my husband and I promised to be his wife.

Q. Is that all of it?

A. Yes, sir, and we talked together.

Q. You talked together?

A. Yes, sir.

Q. And you thought you were married?

A. Yes, sir.

Further : "He said it was a mere matter of form getting married, and if I would live with him he would live with me, and I told him I would, I' guess." "Yes, sir, I told him I would." This conversation, she says, occurred upon a Sunday afternoon, about the middle of August, 1866. She also says that their relations were kept secret in Iowa because of the opposition of her older children. They certainly lived from that time until the separation in 1887 as man and wife, and she has been known to neighbors and friends as Mrs. Bailey ever since coming to Nebraska. There is also some evidence of Bailey's introducing her to strangers as his wife. It cannot be denied that there are many things in her own testimony and elsewhere in the record tending to discredit her story, but it is the province of the jury to pass upon the credibility of witnesses, and if her testimony above quoted establishes a marriage the verdict cannot be disturbed on the ground of insufficient evidence. (*Dutcher v. State,* 16 Neb., 30.)

Marriage is, in Nebraska, a civil contract to which the

consent of parties capable of contracting is essential. (Comp. Stats., ch. 52, sec. 1; *Gibson v. Gibson*, 24 Neb., 394.) When contracted in another state a marriage must here be held valid if valid by the laws of the state where contracted. (Comp. Stats., ch. 52, sec. 17.) There was no proof of the law of Iowa, and in the absence of proof it will be presumed to be in accord with our own. (*Lord v. State*, 17 Neb., 526.) Wherever treated as a civil contract it is sufficient to constitute a marriage that the minds of the parties meet in a common consent at the same time. No particular form of expression is required.

It is claimed that in cases like that at bar there must be direct evidence of the marriage. This may be true, but Mrs. Bailey's testimony is direct evidence of the fact. The rule, when examined in the light of the authorities, only forbids in such cases the establishing of a marriage by proof of cohabitation, reputation, and "holding out." The reason is that while ordinarily such evidence is sufficient because the law places that interpretation upon ambiguous acts which favors innocence, and will not assume that a cohabitation is illicit if by presuming marriage it would be lawful, yet in a prosecution for adultery this presumption conflicts with the presumed innocence of the prisoner of the crime of which he is charged, and therefore such evidence in such cases cannot alone establish a marriage. The essentials of a valid marriage are in all cases the same, the distinction being in the mode of proof alone. Mrs. Bailey's testimony is direct and competent evidence in this case, and if believed, establishes a contract as binding for all purposes as if made in the presence of chosen witnesses at the altar.

3. Plaintiff in error contends that there was no evidence of his cohabiting with Della Brong until after Matilda Bailey ceased to live with him, and that therefore no conviction could be had on the third count. Matilda Bailey testified that she left him in February, 1887; that "he went with Della Brong and staid there the winter before I

left him ; from November until I left him in February he frequently staid at their house three days in the week." This, together with the other evidence as to the relations between plaintiff in error and Della Brong, was sufficient to justify the jury in finding an adulterous cohabitation before Matilda left and within the period laid in the information. Time is not of the essence of the offense and proof of adulterous cohabitation during any portion of the period charged is sufficient. (*State v. Way*, 5 Neb., 283.)

4. It is further contended that the second count, alleging a single act of adultery, was founded upon a portion of the offense charged in the third count, and that therefore a conviction and sentence upon each count would amount to a double punishment for the same offense. We need not inquire whether or not this point would be well taken, provided the single act of adultery were within the period of adulterous cohabitation proved. It is not contended that two such counts may not be joined in one information and a conviction had upon either according to the evidence. As already said, the evidence shows, and without contradiction, that plaintiff in error and Matilda Bailey have not lived together since February, 1887. The offense charged in the third count—keeping another woman and cohabiting with her in a state of adultery while living with one's wife—must therefore have been complete at that time, and an act of adultery later would constitute a distinct and separate offense under another clause of section 208 of the Criminal Code.

5. A motion for a new trial was overruled and sentence passed December 5, 1889, and on January 18, 1890, a supplemental motion for a new trial was filed, supported by affidavits of newly discovered evidence. The affidavit of R. H. Woodward is to the effect that he met Matilda Bailey at the state fair grounds in Lincoln in 1887 and in a conversation, narrated at length in the affidavits, she declared that she had come to Nebraska with Bailey and had

here lived with him; that after some time they had discussed the matter of marriage and decided that having lived so long together without being married they might still continue in the same course. The affidavits of defendant and of each of his counsel show that this evidence was not known to any of them until after the sentence was imposed, when it was disclosed by Woodward in the course of a casual conversation with one of the attorneys upon a railway train. This supplemental motion was overruled, and in this we think the court erred. There was no laches in failing to produce the testimony upon the trial. While the general rule is established that a new trial will not be granted because of newly discovered evidence impeaching a witness, this rule has its limitations. This court has stated the doctrine as to cumulative evidence to be that a new trial will not be granted unless such evidence be of so controlling a character as to probably change the verdict. (*Flannagan v. Heath*, 31 Neb., 776; *Keiser v. Decker*, 29 Id., 92.) The same principle should apply here. The only direct evidence of the fact of marriage was the testimony of the prosecuting witness. While the jury was justified in believing it, there are many facts tending to its discredit. The evidence of Woodward as to a contrary statement made to him before this prosecution was begun would be a very material fact for the consideration of the jury in weighing her testimony and would very probably have led to a different result. Moreover, this testimony would not be entirely in the nature of impeachment. The question of marriage depended largely upon the intention of the parties, and this testimony tends to show that Mrs. Bailey had not in fact regarded their relations as those of husband and wife. Under the circumstances of this case a new trial should have been allowed.

REVERSED AND REMANDED.

THE other commissioners concur.