STATE *v.* ISENHART.

[52 Pac. 569.]

1. ORDER OF PROOF—DISCRETION OF COURT.— Under Hill's Ann. Laws, § 830, providing that "the order of proof shall be regulated by the sound discretion of the court," such discretion extends to the reopening of the trial of a case, to allow the introduction of additional evidence, where no surprise is occasioned thereby.

2. CERTIFICATE OF MARRIAGE AS EVIDENCE.— A certificate of marriage, as prescribed by Hill's Ann. Laws, § 2857, when properly identified, is admissible as part of the *res gestæ*, in connection with proof of the identity of the parties, to establish the fact of marriage.

3. IDEM.— Where it was insisted that the production of a license was essential to the establishment of an alleged marriage, there was no error in instructing that the marriage certificate, which was produced, was "*prima facie* evidence of a legal marriage."

From Columbia: THOMAS A. McBRIDE, Judge.

John W. Isenhart was indicted, tried, and convicted of having committed the crime of adultery with one Mary E. Severn, the wife of Walter Severn. To prove the fact of marriage between Walter and Mary E. Severn, the complaining husband was called as a witness for the state, and, among other things, testified, in substance, that Mary E. Severn was his wife; that her name before marriage was Mary E. Ewing; that they were married at the St. Charles Hotel, in the City of Portland, Oregon, by Mr. James Summers, on the twenty-eighth day of September, 1891, and that they afterwards lived together as husband and wife, and were never divorced. During the course of his examination, as further proof of the marriage, the state offered in evidence a marriage certificate, of which the fol-

lowing is a copy: "State of Oregon, County of
Multnomah, ss: This is to certify that the un-
dersigned, a justice of the peace, North Portland
Precinct, by authority of a license bearing date of
the twenty-eighth day of September, A. D. 1891,
and issued by the County Clerk of the County of
Columbia, did on the twenty-eighth day of Septem-
ber, A. D. 1891, at the St. Charles Hotel, in the
county and state aforesaid, join in lawful wedlock
Mary E. Ewing, of the County of Columbia, and
State of Oregon, and Walter Severn, of the County
of Columbia, and State of Oregon, with their mu-
tual assent, in the presence of A. Nelson and Esther
Foard, witnesses. Witness my hand. [Signed]
James Summers, Justice of the Peace." The court
refused to permit its introduction, and, after some
other witnesses had given evidence, the state rested,
whereupon the defendant moved for a dismissal,
upon the ground that the proof was insufficient to
show the fact of marriage between the complain-
ing witness and the said Mary E. Severn. After
the argument upon the motion had continued for a
time, the district attorney asked leave of the court
to recall Walter Severn for further examination,
which the court granted. The witness then further
testified that prior to his marriage with Mary E.
Severn he procured a license at St. Helens, Colum-
bia County, Oregon, from E. E. Quick, and that
the ceremony was performed by Mr. James Sum-
mers, a justice of the peace of North Portland Pre-
cinct, whose signature to the marriage certificate he
identified. Thereupon the certificate was again of-

fered, and was admitted over the objection of the defendant. In submitting the cause the court instructed the jury, among other things, as follows: "A legal marriage in this state is constituted by a license duly issued in the proper county,— the county in which the family resides,— and a marriage ceremony performed in accordance with that. And I further instruct you that the certificate that has been presented here, if you believe the fact that it was signed by the proper officer who purports to sign it, is *prima facie* evidence of a legal marriage. You will be permitted to take the certificate with you into the jury room."

AFFIRMED.

For appellant there was a brief over the name of *Stott, Boise & Stout*, with an oral argument by *Mr. Raleigh Stott.*

For the State there was a brief over the names of *T. J. Cleeton*, district attorney, and *Harrison Allen*, with an oral argument by *Cicero M. Idleman*, attorney-general.

MR. JUSTICE WOLVERTON, after making the foregoing statement, delivered the opinion of the court.

1. The objection first made is that the court abused its discretion in reopening the cause after the state had rested, and in permitting the introduction of further evidence upon a vital point. The statute prescribes that "the order of proof shall be regulated by the sound discretion of the court":

Hill's Ann. Laws, § 830. This discretion extends
to the reopening of a case in either civil or crimi-
nal trials at the request of a party, for the purpose
of allowing the introduction of additional evidence:
1 Thompson on Trials, § 348; 1 Bishop on Crimi-
nal Procedure, § 966; *State* v. *Porter,* 26 Mo. 201.
The defendant was not taken by surprise, nor did
the further evidence introduced by the state operate
as a fraud upon his rights, as he could meet the
case made as well upon the reopening as he could
have done if fully made in the first instance; and
the procedure adopted was undoubtedly within the
exercise of a sound discretion.

2. It is next objected that the marriage certifi-
cate was not admissible to establish the fact of mar-
riage. The certificate is in every particular such
a one as the statute prescribes shall be given by
the person solemnizing the marriage to each of the
parties, if they should require it: Hill's Ann. Laws,
§ 2857. And while it is not by direct act consti-
tuted evidence of the fact, yet we think, when taken
in connection with direct proof fixing the identity
of the parties, and tending to show that a marriage
had been solemnized by a person competent to offi-
ciate, and given at the marriage, that it is, when
properly identified, admissible as part of the *res
gestæ:* 1 Bishop on Marriage, Divorce and Separa-
tion, § 1006; Bradner on Evidence 260; *State* v.
*Abbey,* 29 Vt. 60.

3. It is further contended that the court erred
in instructing the jury that the marriage certificate
was *prima facie* evidence of a legal marriage. The

instruction goes no further than to say that the certificate is *prima facie* evidence that a license had been duly issued, and that a marriage ceremony had taken place in pursuance of such license, which was styled a legal marriage, and, therefore, that the certificate was *prima facie* evidence of such a marriage. It does not appear to have been intended as an instruction that the certificate established *prima facie* a marriage between competent parties mutually assenting, and otherwise lawful in all things that go to make up a valid marriage under the statute, but was given in view of the fact that no license was offered at the trial, it being insisted that the production of such license was essential to the establishment of the marriage relation. Other testimony was submitted, as we have seen, tending to prove the fact of marriage, the competency of the parties, and their identity; and this, we presume, was properly submitted to the jury, along with the certificate, for their consideration. The instruction was probably well understood, and there was no error in giving it. The fact that the name Mary E. Ewing appears as Mary A. Ewing in the certificate was susceptible of explanation, and it was competent to otherwise establish her identity.

AFFIRMED.