[No. 13561.   Department One.   December 5, 1916.]

## THE STATE OF WASHINGTON, *Respondent,* v. ARTHUR R. WHEELER, *Appellant.*[1]

ADULTERY — EVIDENCE — PROOF OF MARRIAGE — SUFFICIENCY. In a prosecution for adultery, marriage is an essential element of the crime and cannot be inferred from circumstances; and a conviction cannot be sustained where there was no evidence that the person performing the ceremony was authorized by law to do so.

SAME. Upon a prosecution for adultery, a statement by defendant's attorney, during the progress of the examination of a witness, that a person who performed the marriage ceremony "used to be a justice of the peace" is not an admission and does not dispense with the necessity of proof of authority to perform the ceremony.

CRIMINAL LAW—TRIAL—DISMISSAL—MOTION—SUFFICIENCY. A motion to dismiss a criminal case upon the general ground of insufficiency of the evidence is bad, as there is no nonsuit in a criminal case; and is insufficient as a motion to direct a verdict of acquittal, since it fails to point out the particular matter as to which there was a failure of proof (CHADWICK, J., dissenting).

CRIMINAL LAW—TRIAL—INSTRUCTIONS—ASSUMPTION OF FACTS. In a prosecution for adultery, it is an encroachment upon the province of the jury and reversible error to instruct, "if from the evidence of the opportunity and from other evidence of a disposition of the parties," etc., where there was no evidence of such disposition etc., as it, in effect, tells the jury that there was direct evidence thereof, in the opinion of the court.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered February 14, 1916, upon a trial and conviction of adultery.   Reversed.

*W. H. Cameron* and *Hayden, Langhorne & Metzger,* for appellant.

*C. A. Studebaker* and *W. O. Grimm,* for respondent.

MAIN, J.—The defendant in this case is charged with the crime of adultery.   It is alleged in the information that the crime was committed on the 9th day of November, 1915,

[1]Reported in 161 Pac. 373.

with one Louisa Wirsdorfer, who was then the wife of Mathias Wirsdorfer. At the time alleged, Mrs. Wirsdorfer was living separate and apart from her husband, and was conducting in the city of Centralia a rooming house known as the Lenox Hotel. From some time early in the month of September, 1915, until after the offense is alleged to have been committed, the defendant was a roomer and boarder at the hotel. The trial of the defendant upon the charge stated in the information resulted in a verdict of guilty. Motion for a new trial being made and overruled, judgment was entered upon the verdict, from which this appeal is prosecuted. The first question is whether the state offered sufficient evidence to *prima facie* establish that Louisa Wirsdorfer and Mathias Wirsdorfer had been previously married. Mathias Wirsdorfer testified that he and Louisa Wirsdorfer were married in the year 1892, in the city of Chehalis. After this general testimony as to marriage was offered, the same witness testified as follows:

"Q. Going back to your marriage again, by whom were you married? A. By Maaker. Q. Do you remember his name?' A. Yes, sir. Q. His initials? A. Maaker used to be a dentist here. Mr. Langhorne: Dr. E. A. Maaker, he used to be a dentist and justice of the peace here. Court: I think I have heard of him myself."

No other evidence of the marriage, nor of the fact that E. A. Maaker was a justice of the peace at the time the ceremony is claimed to have been performed, was offered. From this testimony, it does not appear that Maaker was a justice of the peace when it is said he performed the marriage ceremony. Where the charge is adultery, marriage is an essential element of the crime. Rem. 1915 Code, § 2457; *Buchanan v. State*, 55 Ala. 154; *Banks v. State*, 96 Ala. 78, 11 South. 404. In such a case, marriage in fact, as distinguished from one inferable from circumstances, must be proven. 1 Wharton, Criminal Evidence (10th ed.), p. 405; *Miner v. People*, 58 Ill. 59.

The reason for this rule is that a marriage inferable from circumstances is based upon a presumption, and, in a criminal action, this presumption is met by the stronger presumption of the defendant's innocence. The law upon this question cannot be better stated than by quoting an excerpt from the opinion in the case of *Summerville v. Summerville*, 31 Wash. 411, 72 Pac. 84. It was there stated:

"A valid marriage may be presumed to exist from general reputation among the acquaintances of the parties that such is the fact, when that reputation is accompanied by their cohabitation, and arises from their holding themselves out to the world as occupying that relation to which the law refers when marriage is mentioned. *Wallace's Case*, 49 N. J. Eq. 530, 25 Atl. 260; *White v. White*, 82 Cal. 427, 23 Pac. 276, 7 L. R. A. 799; *Murray v. Murray*, 6 Ore. 26; *Arthur v. Broadnax*, 3 Ala. 557, 37 Am. Dec. 707; Underhill, Evidence, p. 158, § 114. The exception to the rule that marriage may be presumed from evidence of cohabitation and repute is where a public or criminal offense is involved. The exception is based upon the ground that the presumption of marriage without proof of actual marriage cannot overcome the stronger presumption of innocence. *White v. White*, supra; *State v. Hodgskins*, 19 Me. 155, 36 Am. Dec. 742; Stewart, Marriage & Divorce, § 126."

Where marriage is an essential element of the crime charged, it is necessary that there be some evidence showing that the person performing the ceremony was authorized to perform such functions at the time. Underhill, Criminal Evidence (2d ed.), page 661; *State v. Hodgskins*, 19 Me. 155, 36 Am. Dec. 742; *State v. Bowe*, 61 Me. 171.

In the case last cited, it was said:

"But we do not think the few words uttered by Hannah A. Littlefield amount to proof of a legal marriage on her part. It does not even appear that this marriage was solemnized by any one 'professing' to be either 'a justice of the peace or an ordained or licensed minister of the gospel . . .' "

In the present case, there is no evidence that Maaker was a justice of the peace at the time the ceremony was per-

formed. It is claimed, however, that the statement of counsel for the defendant, as appears in the excerpt from the record above quoted, amounts to an admission that Maaker was, at the time of the marriage, a justice of the peace. The statement of counsel does not admit that Maaker was a justice of the peace at the time, and was not made as an admission. It was a mere voluntary statement, suggesting that, at one time, Maaker was a dentist and a justice of the peace. An admission by an attorney to be binding upon his client must be distinct and formal, and made for the express purpose of dispensing with the formal proof of some fact at the trial. 1 Greenleaf, Evidence (16th ed.), § 186; 1 Ency. of Evidence, p. 561; *Treadway v. S. C. & St. P. R. Co.*, 40 Iowa 526; *Davidson v. Gifford*, 100 N. C. 18, 6 S. E. 718. The case of *State v. Nelson*, 39 Wash. 221, 81 Pac. 721, is distinguishable. There the testimony offered tended to show a marriage by a minister of the gospel.

But even though the marriage was not sufficiently proven, it does not follow in this case that the action now should be ordered dismissed. At the conclusion of the state's case, the defendant moved that the action be dismissed upon the grounds "that the evidence is totally insufficient to justify the submission of the case to the jury . . ." This motion does not invite the court to direct a verdict of acquittal, but is, in form, a motion for dismissal, and is referred to in the briefs as a motion for nonsuit. In *State v. Hyde*, 22 Wash. 551, 61 Pac. 719, it was said:

"There can be no non-suit in a criminal, as in a civil, case. Bishop, New Criminal Procedure, § 961. The proper practice is to ask the court to direct an acquittal."

Treating the motion, notwithstanding its form, as a motion addressed to the court to direct an acquittal, it was yet insufficient, because it nowhere pointed out wherein the evidence was insufficient, but was a general challenge of the sufficiency thereof. In motions of this character, the attention of the court should be directed to the precise point made

and the grounds therefor. Quoting further from the *Hyde* case on this question, it is said:

"This motion is a general one, and only challenges the general sufficiency of the evidence; that is, says, in effect, there is a total failure of evidence. Upon a motion of this kind, the only question raised is whether there is any evidence tending to prove the crime charged, not whether the evidence fails in some particular matters. The record fails to disclose that the objection to the evidence in the particular matter, as to the kind, amount, and value of money, was called to the attention of the court, and in a case of this kind the motion should direct the attention of the court and opposite counsel to the precise point made and the grounds therefor."

The objections made to the instructions will next be noticed. Instruction number three concluded with this sentence:

"If from the evidence of the opportunity at that time, and from other evidence of a disposition of the parties to indulge in sexual intercourse between themselves and from all other facts and circumstances proven on the trial you are satisfied beyond a reasonable doubt that at the time and place, set out in the information, they had sexual intercourse, then this is sufficient."

There was another instruction of similar import. In the quoted part of the instruction, the court, in effect, told the jury that there was "evidence of a disposition of the parties to indulge in sexual intercourse between themselves." There is no direct evidence which shows or tends to show a disposition of the parties to indulge in sexual intercourse between themselves. It may be that there was evidence from which the jury had a right to infer such disposition. Had the court told the jury that if they found from the evidence that the parties had a disposition to indulge in sexual intercourse between themselves, this fact should, with all the other evidence in the case, be considered in determining the guilt or innocence of the accused, a different question would be presented. The way the instruction reads, the jury could not well have

understood it differently than that, in the opinion of the court, there was direct evidence of such disposition. So instructing the jury was an encroachment upon § 16 of art. 4 of the constitution of this state, and was therefore reversible error.

It is also claimed that error was committed in failing to instruct the jury with sufficient definiteness that, unless they found the act charged to have been committed on the 9th day of November, 1915, the verdict should be one of acquittal. During the trial, the state elected to ask for a conviction on account of the act charged to have been committed upon the date mentioned. While the instructions in this regard are, possibly, not as definite as they should have been, yet, when the entire charge is read, it does not seem that the jury could have been misled thereby, or misunderstood the court's meaning. The other errors assigned are such as are not likely to appear upon another trial of the cause, and for that reason, will not be here reviewed. The judgment will be reversed, and the cause remanded with direction to the superior court to grant a new trial.

MORRIS, C. J., PARKER, and ELLIS, JJ., concur.

CHADWICK, J. (dissenting)—This case is distinguishable from the case of *State v. Hyde*. The objection was "called to the attention of the court" and no purpose could be served by repeating it at the time of making the motion at the close of the testimony. The testimony failed in a material particular, and defendant should have been acquitted.