Argued May 28, reversed and remanded July 22, 1924.

# STATE *v.* IRWIN WAKEFIELD.

(228 Pac. 115.)

**Jury—Question to Venireman as to His Willingness to have One in His Frame of Mind Sit in Own Case Held Objectionable.**

1. District attorney's question to venireman as to whether he would be willing to have one in his present frame of mind to sit on jury in case he was conducting *held* objectionable as not necessarily tending to determine his impartiality.

**Jury—District Attorney Should so Examine Venireman as to Disclose Freedom from Bias for or Against Either Side.**

2. Examination of venireman by district attorney should be so conducted as to disclose freedom from bias in favor of or against either side.

**Criminal Law—Testimony of Party to Marriage Admissible to Prove It.**

3. Testimony of party to marriage is admissible to prove it.

**Witnesses—Husband of Adulteress may Testify as to Their Marriage.**

4. Under Section 1535, Or. L., husband of paramour of defendant in adultery prosecution may testify as to their marriage.

**Adultery—Testimony of Woman's Husband as to Her Having Seen Attorney About Divorce Held Irrelevant in Prosecution of Single Man.**

5. In prosecution of single man for adultery, testimony of woman's husband as to her having seen attorney about getting divorce *held* properly excluded as irrelevant.

**Witnesses—Questions as to Witness' Manufacture of Whisky and Other Misconduct Held Permissible as Affecting Credibility.**

6. In prosecution of single man for adultery, it was in court's discretion to require woman's husband to testify as to his alleged manufacture of whisky and misconduct with show girls, for purpose of weighing his credibility.

**Criminal Law—Sustaining Objections to Questions Asked to Impeach Witness' Credibility Held not Reversible Error.**

7. In prosecution of single man for adultery, sustaining objections to questions to woman's husband as to his alleged manufacture of whisky and other misconduct *held* insufficient to warrant reversal as constituting abuse of discretion.

**Criminal Law—Permitting Questions on Cross-examination of Defendant as to Certain Matters not Very Material Held not Reversible Error.**

8. In adultery prosecution, overruling objections to questions on cross-examination of defendant as to whether he was interested in

what certain men wanted who came around his room on certain occasions *held* not error, though matter was not very material, no harm resulting.

**Adultery—Prosecution of Single Man may be on Information of Woman's Husband.**

9. Prosecution for adultery can only be conducted on information of injured spouse (Section 2072, Or. L.), but prosecution of single man may be on information of woman's husband.

**Adultery—State Need not Show, in Prosecution not Commenced on Complaint of Defendant's Wife, That Defendant was Unmarried.**

10. That indictment does not show that prosecution was commenced on complaint of defendant's wife does not cast burden on state to prove that defendant was unmarried; that being matter of defense.

**Criminal Law—Refusal of Instructions Covered by Instructions Given not Error.**

11. Refusal of instructions, subject matter of which is given by court, is not error.

**Criminal Law—Refusal of Instruction on Presumption of Innocence and Reasonable Doubt Held not Reversible Error.**

12. Refusal of instruction as to presumption of innocence and necessity of acquittal in case of reasonable doubt of guilt, after unbiased consideration of all evidence, *held* not reversible error, though it would have been proper to give it, and substance thereof was not given, except as to presumption of innocence.

**Criminal Law—Paramour of Defendant Prosecuted for Adultery is "Accomplice," Whose Testimony Should be Viewed With Distrust.**

13. Accomplice being one connected with crime charged, either as principal or accessory, one with whom defendant is charged with commission of adultery, is "accomplice," whose testimony should be viewed with distrust.

**Adultery—Marriage of One Participant Essential Element of Crime.**

14. Marriage of one participant in adultery is essential element of crime.

**Adultery—Marriage not Presumed from Reputation and Cohabitation.**

15. Marriage of participant in adultery must be established by direct evidence, and will not be presumed from reputation and cohabitation.

---

10. Weight and admissibility of testimony of paramour, see note in Ann. Cas. 1913A, 1240.

14. Necessity of proof of marriage in prosecution for adultery, see note in 68 L. R. A. 44.

See 2 C. J., §§ 7, 13, 21, 42, 58 (1926 Anno.) 59, 61–63 (1926 Anno.), 68; 16 C. J., §§ 562, 1033, 1202, 1374, 1420, 2506, 2647; 17 C. J., §§ 3657, 3659, 3695, 3706; 22 C. J., § 46; 35 C. J., §§ 437 (1926 Anno.), 443 (1926 Anno.); 26 Cyc. 859, 886; 40 Cyc. 2221, 2601.

**Criminal Law—Required Proof of Marriage Stated.**

16. To prove marriage, in prosecution for adultery, ceremony apparently constituting legal marriage must be proved by eyewitness, though certificate showing ceremony by duly authorized official, who will be presumed to have acted within scope of authority, is offered in evidence and made *prima facie* evidence of marriage by statute.

**Adultery—Marriage may be Proved by Accused's Voluntary and Deliberate Admission, Oral or Written.**

17. In adultery prosecution, accused's marriage may be proved by his admission, oral or written, if made voluntarily and deliberately.

**Criminal Law—Admission of One Participant not Competent Against Other.**

18. Admission of one participant in adultery is not competent evidence against the other.

**Adultery—Evidence of Marriage Agreement Between Parties to Valid Common-law Marriage Sufficient.**

19. Where common-law marriage is lawful, evidence of marriage agreement is sufficient in prosecution for adultery.

**Adultery—Testimony of Participant and Her Husband as to Their Marriage Held Insufficient.**

20. In adultery prosecution, testimony of defendant's paramour and her husband as to their marriage *held* insufficient to establish fact; there being no evidence of marriage ceremony.

**Marriage—Requisites of Valid "Marriage" Stated.**

21. To constitute valid "marriage" within state, no particular form is required, except that parties assent or declare, in presence of minister or judicial officer solemnizing it and two attending witnesses, that they take each other as husband and wife (Section 9724, Or. L.).

**Adultery—Instruction as to Sufficiency of Evidence of Marriage Held Reversible Error.**

22. In adultery prosecution, instruction that testimony of defendant's paramour and her husband as to their marriage was sufficient to establish fact *held* reversible error.

**Criminal Law—Weaker and Less Satisfactory Evidence Than Parties Can Offer Should be Viewed With Distrust.**

23. Weaker and less satisfactory evidence than that within power of party to offer, such as oral testimony as to marriage by parties thereto in lieu of evidence of marriage ceremony between them, should be viewed with distrust (§ 868, subd. 7, Or. L.)

**Criminal Law—Presumption of Marriage of Parties Overcome by Presumption of Innocence of Alleged Adulterer.**

24. Presumption, under Section 799, subdivision 30, Or. L., that persons deporting themselves as husband and wife have entered into

lawful marriage contract is disputable, and is overcome, in prosecution for adultery, by stronger presumption of innocence under subdivision 1.

**Adultery—Insufficient Evidence of Marriage Does not Necessarily Require Discharge.**

25. Insufficient evidence of marriage of unmarried defendant's paramour does not necessarily require that defendant be discharged.

**Criminal Law—Refusal to Order New Trial for Error in Instruction as to Sufficiency of Evidence of Certain Fact Held Reversible Error.**

26. Refusal to set aside verdict of guilty and order new trial of adultery case for error in instructing jury, that testimony of defendant's paramour and her husband as to their marriage was sufficient to establish fact *held* reversible error.

**Criminal Law—Circuit Court Held to have Jurisdiction of Indictment for Adultery, Though Information Filed With Magistrate, and No Preliminary Examination Held.**

27. That information charging adultery was filed with magistrate and no preliminary examination had did not deprive Circuit Court of jurisdiction to try case on indictment returned by grand jury meeting within two days after offense; magistrate being without jurisdiction of crime.

**Adultery—No Presumption That Man of Marriageable Age is Either Single or Married.**

28. There is no presumption that man of marriageable age is either single or married.

From Lake:　J. M. BATCHELDER, Judge.

Department 1.

The defendant, Irwin Wakefield, was convicted of the crime of adultery with Golda Thompson, and sentenced to the term of one year in the penitentiary.

The body of the indictment is as follows:

"The said Irwin Wakefield, on the 21st day of November, A. D. 1922, in the said county of Lake and State of Oregon, then and being, did, then and there unlawfully and feloniously commit the crime of adultery with one Golda Thompson, she the said Golda Thompson then and there being a married woman, and then and there being the lawful wife of

Geo. W. Thompson, and he, the said Irwin Wakefield, then and there being a male person and then and there not being the lawful husband of said Golda Thompson.''

The trial was had on the eleventh day of June, 1923. The defendant appeals assigning 24 alleged errors. The errors will be mentioned in the opinion in as far as they are deemed necessary in order to be understood.      REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. O. M. Corkins* and *Mr. A. Fairchild,* with an oral argument by *Mr. Corkins.*

For respondent there was a brief over the names of *Mr. J. M. Devers,* Assistant Attorney General, *Mr. T. S. McKinney,* District Attorney, and *Mr. S. A. Jetmore,* with an oral argument by *Mr. Devers.*

COSHOW, J.—1. The first two errors are predicated upon the ruling of the court in permitting the prosecuting attorney, over the objection of the defendant, to propound to two jurymen, after the defendant had exhausted his peremptory challenges, the following question:

''If you were acting as a district attorney in this case, would you be willing to have a man who is in your present frame of mind to sit on a jury in a case that you were conducting?''

2. This question is objectionable. It does not necessarily tend to determine impartiality in the venireman. If the venireman was favorable to the state, he would answer affirmatively. But the examination of veniremen should be so conducted as to determine their fitness as impartial triers of the case; not their will to accept as a juror one who might be favorably

disposed at that time to one side or the other. A
district attorney might 5e very willing to accept as
a juror one who is prejudiced in favor of the state.
Such a venireman would be willing to have a man
who is in his frame of mind sit on the jury—not be-
cause he was impartial and free from bias—but be-
cause he was biased in his favor. The examination
should be so conducted as to disclose the freedom of
bias in favor of or against either side. From the
view we take of other assignments of error we do not
determine whether or not permitting this question to
be propounded would be reversible error, if standing
alone.

3, 4. Assignments of error 3 and 4 are predicated
upon the questions propounded to George W. Thomp-
son, prosecuting witness and alleged husband of the
said Golda Thompson. The questions objected to are
as follows:

"Now you are the wife,—I should say the husband
of Golda Thompson, are you not?

"And so Golda Thompson is at this time your
wife, is she?"

The objection was made on the ground that the
questions called for a conclusion and not the best
evidence. These questions were propounded for the
purpose of proving the marriage relation between
the prosecuting witness, George W. Thompson, and
the said Golda Thompson. The testimony of a party
to a marriage is admissible to prove the marriage:
*State* v. *Isenhart*, 32 Or. 170 (52 Pac. 569); *Bailey* v.
*State*, 36 Neb. 808 (55 N. W. 241). The statute ex-
pressly prescribes that a husband may be a witness
in a case wherein his wife is charged with adultery:
Section 1535, Or. L.

5. The court did not err in sustaining the objection to the question asked of the witness, George W. Thompson, on cross-examination,—

"Well, you know that she had written over there or had gone over there sometime before that, and seen an attorney about getting a divorce or something of that sort, she told you that didn't she?"

That matter was clearly foreign to the guilt or innocence of the defendant. The court did not err in denying the offer of the defendant to state what the witness Thompson would testify to in answer to the last mentioned question.

6, 7. It was in the discretion of the court to require the witness, Thompson, to answer the questions propounded to him regarding his alleged manufacture of whisky and misconduct with the "49 show girls" for the purpose of weighing the credibility of the witness: State v. Bacon, 13 Or. 143 (9 Pac. 393, 57 Am. Rep. 8); Redsecker v. Wade, 69 Or. 153 (134 Pac. 5, 138 Pac. 485, Ann. Cas. 1916A, 269). Sustaining the objections to these questions, standing alone, is not sufficient error to warrant a reversal on that ground. We cannot say that the court abused its discretion in sustaining the objections.

8. There was no error in overruling the objections of the defendant to the questions propounded to the defendant on cross-examination regarding whether or not he was interested in what certain men wanted who came around his room on certain occasions. These questions and the answers may not have been very material, but they were propounded on cross-examination, and we are unable to see any harm that could have possibly resulted to the defendant by the inquiries.

9, 10. The defendant requested the court to give instruction No. 2, which is as follows:

"I instruct you that the burden is on the state to prove to your satisfaction that at the time the state claims the crime alleged in the indictment was committed, the defendant, Irwin Wakefield, was an unmarried man."

It is the settled law in this state that prosecutions for adultery can only be conducted upon the information of the injured spouse: Section 2072, Or. L.; *State v. Stevenson,* 98 Or. 985 (193 Pac. 1030). But where the charge is against a married woman and a single man, the prosecution may be upon the information of the woman's husband. This court, in the able opinion of Mr. Justice BROWN in *State v. Stevenson,* 98 Or. 285 (193 Pac. 1030), followed the ruling of the Supreme Court of the State of Iowa. That Supreme Court has held that whether or not the defendant, charged with the crime of adultery committed with a married woman, was married, was a matter of defense. In *State v. Mahan,* 81 Iowa, 121, in page 123 (46 N. W. 855, 856), the opinion reads:

"But the question raised by the demurrer in this case is, whether it is necessary, when the indictment does not show that the prosecution was commenced on the complaint of the husband or wife of the defendant, that it should show that the defendant was not married when the proceedings were instituted. In considering this question it must be remembered that the complaint required by the statute is not an element of the crime: *State v. Donovan,* 61 Iowa, 278. The indictment discloses no fact from which the marriage of defendant can be inferred. We are not justified in presuming that he was married when these proceedings were commenced. The indictment shows that defendant committed the crime of adultery, and that his guilt does not depend upon his state as to

being married or single at the time of the act. Under these circumstances, if the defendant was married, the failure of his wife to make complaint was a matter of defense, which he was required to prove in order to take advantage of it. It is not necessary to negative an exception made in a criminal statute, unless it adds a qualification to bring a case within it, which, but for the qualification, would be without it.''

The court did not err, therefore, in refusing to give the requested instruction mentioned above.

11. Assignment of error No. 15 predicated upon the court's refusal to give instruction No. 3 as requested by the defendant is not seriously insisted upon either in the brief or the oral argument. The subject matter of that requested instruction and also of the requested instruction No. 9, the refusal to give which is assignment of error No. 16, was given by the court, and no error was committed in refusing to give those instructions in the language requested by the defendant.

12. Assignment of error No. 17 is predicated upon the court's refusal to give defendant's requested instruction No. 14, which is as follows:

''You must not allow the nature of the charge in any way sway or bias your judgment in your deliberations on a verdict. You must not indulge in any speculation outside the evidence, but must look alone to the evidence of this case, and from it make your decision. That defendant is entitled to your calm, unbiased, and deliberate judgment upon the truthfulness of the charge against him. He is presumed by the law to be innocent, and this presumption is evidence in his behalf, and protects him from a conviction until his guilt is established beyond a reasonable doubt. If, therefore, you have a reasonable doubt of defendant's guilt, after a careful and unbiased consideration of all the evidence of the case,

you must resolve that doubt in his favor and return a verdict of not guilty.''

This requested instruction was given in *State* v. *Hamilton,* 80 Or. 562, 565 (157 Pac. 796), where it is said:

''This is an instruction in the nature of a caution to the jury, and while the court was under no special obligation to give it, it correctly states the law, and does not involve error.''

The substance of this requested instruction was not given except as to the presumption of innocence. In this case it is our opinion that it would have been proper to have given the instruction, but do not consider it reversible error to have refused it.

Assignment of error No. 18 is predicated upon the court's instruction No. 24. It was taken bodily from *State* v. *Eggleston,* 45 Or. 346 (77 Pac. 738, 741), where it met with the approval of this court. It was not error to give instruction No. 24.

13. Assignment of error No. 19 is predicated upon instruction No. 21, which is as follows:

''You are instructed, gentlemen, that an accomplice is one connected with the crime charged, either as principal, accomplice or accessory; hence, under the allegations of the indictment Golda Thompson is an accomplice. I charge you that the testimony of an accomplice should be viewed by the jury with distrust.''

The only complaint made about this instruction is that the court invaded the province of the jury in declaring Golda Thompson to be an accomplice under the allegations of the indictment. This instruction clearly states the law: *State* v *Scott,* 28 Or. 331, 335 (42 Pac. 1); *State* v. *Case,* 61 Or. 265 (122 Pac. 304);

*State* v. *Jarvis,* 18 Or. 360 (23 Pac. 251); *State* v. *Roberts,* 15 Or. 187 (13 Pac. 896).

14, 15. Assignment of error No. 20 is predicated upon instruction No. 27, which is in the following language:

"The evidence of George W. Thompson and Golda Thompson in regard to their marriage is sufficient to establish the fact that George W. Thompson and Golda Thompson were man and wife at the time the crime is alleged to have been committed, if you believe their testimony on that subject."

16–18. The marriage of one of the participants in a charge of adultery is an essential element of the crime. Marriage must be established by direct evidence. It is not sufficient to presume a marriage relation from reputation and cohabitation between the parties.

"The degree of proof differs with the nature of the proceeding in which the question of marriage is involved. If the question is collateral, proof by cohabitation is all that is required; if the main issue is the question of the marriage itself, then it must be proved by the record or the eye-witnesses.

"Thus the burden is upon the prosecution to establish an actual marriage in prosecutions for bigamy, polygamy, adultery, and criminal conversation; and proof of the marriage, in such case, by common reputation of proof of living together, is not sufficient." 1 Wharton's Criminal Evidence (10 ed.), 404, 405, § 170.

"It must be proved that one of the parties to the adultery was married at the time. A much stricter degree of proof is required to show marriage in criminal proceedings than will suffice in a civil trial. Often by statute the marriage certificate is made *prima facie* evidence of the marriage. Such a statute does not, by implication alone, exclude other proof, and the introduction of the certificate must always

111 Or.—40

be supplemented by some evidence from which the jury may identify the party named therein as the accused. The certificate should show a ceremony performed by a duly authorized official. He will be presumed to have acted within the scope of his authority. But the certificate is not conclusive of all facts necessary to constitute a valid marriage. Thus, if it appears that one of the parties was under age, ratification must be shown. The certificate is not the best evidence, even when admissible by statute. The ceremony must be proved by the testimony of any one who was present and saw it performed, but it is not enough that he shall testify that he saw a ceremony performed by someone. He ought to be able to testify that all the circumstances were such as to apparently constitute a legal marriage ceremony. Despite some uncertainty in the early cases, it is now well settled that the marriage of the accused may be proved by his admissions, oral or in writing, but his statement that he is married, to be admissible, must have been made voluntarily and with deliberation." Underhill's Criminal Evidence (3 ed.), 821, § 582; 2 C. J. 26, § 58.

"The admission of one of the participants in an act of adultery is not competent evidence against the other." 2 C. J. 27, § 62; *Territory* v. *Castro,* 14 Hawaii, 131; *Commonwealth* v. *Thompson,* 99 Mass. 444; Underhill's Criminal Evidence (3 ed.), 821, § 582.

In *Summerville* v. *Summerville,* 31 Wash. 411 (72 Pac. 84), it was said:

"The exception to the rule that marriage may be presumed from evidence of cohabitation and repute is where a public or criminal offense is involved. The exception is based upon the ground that the presumption of marriage without proof of actual marriage cannot overcome the stronger presumption of innocence." *White* v. *White,* 82 Cal. 427 (23 Pac. 276, 7 L. R. A. 799); *State* v. *Hodgskins,* 19 Me. 155 (26 Am. Dec. 742); Stewart, Marriage and Divorce, § 126; 18 R. C. L. 434, 435, § 62, note 11.

In *State* v. *Wheeler,* 93 Wash. 538 (161 Pac. 373, in page 374), the court rules:

"Where marriage is an essential element of the crime charged, it is necessary that there be some evidence showing that the person performing the ceremony was authorized to perform such functions at the time. Underhill on Criminal Evidence (2 ed.), 661; *State* v. *Hodgskins,* 19 Me. 155 (26 Am. Dec. 742); *State* v. *Dowe,* 61 Me. 171. In the case last cited, it was said:

" 'But we do not think the few words uttered by Hannah A. Littlefield amount to proof of a legal marriage on her part. It does not even appear that this marriage was solemnized by anyone "professing" to be either "a justice of the peace or an ordained or licensed minister of the gospel." '

"In the present case, there is no evidence that Maaker was a justice of the peace at the time the ceremony was performed. It is claimed, however, that the statement of counsel for the defendant, as appears in the excerpt from the record, above quoted, amounts to an admission that Maaker was, at the time of the marriage, a justice of the peace. The statement of counsel does not admit that Maaker was a justice of the peace at the time, and was not made as an admission. It was a mere voluntary statement, suggesting that, at one time, Maaker was a dentist and a justice of the peace. An admission by an attorney to be binding upon his client must be distinct and formal, and made for the express purpose of dispensing with the formal proof of some fact at the trial."

The last case quoted from also distinguishes it from the case of *State* v. *Nelson,* 39 Wash. 221 (81 Pac. 721). The distinction is that in the Nelson case the testimony tended to show a marriage by a minister of the gospel.

No case has been cited, and we have been unable to find any case, where a conviction for adultery has

been sustained without evidence of the marriage ceremony, except where the statute has expressly provided that cohabitation and reputation shall be sufficient evidence of marriage: *State* v. *Springer,* 40 Utah, 471 (121 Pac. 977); *State* v. *Isenhart,* 32 Or. 170 (52 Pac. 569); *State* v. *Eggleston,* 45 Or., 346, 355 (77 Pac. 738); *Craft* v. *State,* 13 Ga. App. 79 (78 S. E. 776); *State* v. *Ledford,* 177 Iowa, 528 (159 N. W. 188); *State* v. *Moore,* 36 Utah, 521 (105 Pac. 293, Ann. Cas. 1912A, 284, 288, and note following); *State* v. *Hodgskins,* 19 Me. 155 (36 Am. Dec. 742); *State* v. *Winkley,* 14 N. H. 480; *Langtry* v. *State,* 30 Ala. 536; *Buchanan* v. *State,* 55 Ala. 154; *Bailey* v. *State,* 36 Neb. 808 (55 N. W. 241).

The case of *State* v. *Still,* 68 S. C. 37 (46 S. E. 524, 102 Am. St. Rep. 657), is a South Carolina case in which the court held cohabitation and reputation sufficient evidence under a prosecution for adultery. The decision, however, is based upon a statute peculiar to that state making such evidence sufficient. The State of Nebraska recognizes common-law marriages.

In the case of *Bailey* v. *State,* 36 Neb. 808, in page 811 (55 N. W. 241, 242), we find the following language:

"Marriage is, in Nebraska, a civil contract to which the consent of the parties capable of contract is essential. * * Wherever treated as a civil contract it is sufficient to constitute a marriage that the minds of the parties meet in a common consent at the same time. No particular form of expression is required.

"It is claimed that in cases like that at bar there must be direct evidence of the marriage. This may be true, but Mrs. Bailey's testimony is direct evidence of the fact. The rule, when examined in the light of the authorities, only forbids in such cases the establishing of a marriage by proof of cohabitation, repu-

tation, and 'holding out.' The reason is that while ordinarily such evidence is sufficient because the law places that interpretation upon ambiguous acts which favors innocence, and will not assume that a cohabitation is illicit if by presuming marriage it would be lawful, yet in a prosecution for adultery this presumption conflicts with the presumed innocence of the prisoner of the crime of which he is charged, and therefore such evidence is such cases cannot alone establish a marriage. The essentials of a valid marriage are in all cases the same, the distinction being in the mode of proof alone. Mrs. Bailey's testimony is direct and competent evidence in this case, and if believed, establishes a contract as binding for all purposes as if made in the presence of chosen witnesses at the altar.''

19. In the case last quoted from, the testimony of Mrs. Bailey was positive and direct as to an explicit agreement between her and her husband of a promise each to the other of marriage. Mrs. Bailey testified as follows:

"He said it was a mere matter of form getting married, and if I would live with him he would live with me, and I told him I would, I guess. Yes, sir, I told him I would.''

She specified the time and place in which this agreement was entered into. It thus appears that where a common-law marriage is lawful, evidence of the marriage agreement, in a prosecution for adultery, is sufficient.

20. In the instant case there is no evidence of a marriage ceremony. The testimony tends to show that the prosecuting witness and Golda Thompson were twice married. In neither of said alleged marriages is there any evidence of a marriage ceremony. Both the prosecuting witness and Golda Thompson, the allege paramour of the defendant, testified that

they were married at Vale, Oregon, and that she afterwards procured a divorce in Alturas, California. The evidence as to the alleged second marriage is as follows:

"Q. How long did you live separate and apart from her at that time, the first time?

"A. About two months. * *

"Q. And then you remarried her did you, you were again married were you?

"A. Yes, sir.

"Q. And then you went back and lived with her as man and wife did you, you went back with her again?

"A. Well, I went down to Fandangle and she came up here to the town of Lakeview a little after that, but—yes we went back to living together. * *

"Q. Two years ago last January, now you was divorced from her wasn't you?

"A. Well not an actual divorce no, just the first decree."

The testimony of Golda Thompson touching the same matter is as follows:

"Q. How long did you live with him until you was finally divorced from him?

"A. Why I was divorced from him on April the 10th, 1918, at Alturas, California.

"Q. And how long did you so live divorced from him?

"A. I lived that way until the 15th of June, 1921."

In addition to the testimony regarding the marriage, the evidence shows that they had three children. It is our understanding that direct evidence of marriage is always required under prosecution for adultery, except in states like South Carolina where a different rule is prescribed by statute. There must be evidence of a marriage ceremony. A broad statement from one or the other of the parties

that they have been married is not sufficient. In discussing the reason for requiring direct evidence of the marriage, 1 Wharton's Criminal Evidence, tenth edition, in page 404, reads thus:

"It does not follow because the parties cohabit, that they are actually married. It may be a pretense to cover up an illicit intercourse, and if the illicit intercourse, known to be such at its inception, continues, where there is no impediment to the marriage, the illicit character will be presumed to continue until the changed relation of the parties is proved. It may be that the parties honestly believe themselves to be married, but that such belief was founded on a mistake of fact."

21. It may be that the prosecuting witness and Golda Thompson never observed the formal requirements that constitute a valid marriage in this state. Their testimony, that they were married, may be true from their viewpoint and yet not be legally sufficient to constitute a valid marriage. In order to constitute a valid marriage within the state, no particular form is required except that the parties thereto shall assent or declare in the presence of a minister or judicial officer solemnizing the same, and in the presence of two attending witnesses, that they take each other to be husband and wife: Section 9724, Or. L.

22. There is no evidence at all that any kind of ceremony was observed by the prosecuting witness and Golda Thompson either in this state or in the State of California. Even if we could assume that common-law marriage is lawful in the State of California, yet there should have been some evidence of an actual contract between the two to take each other for husband and wife. We must not be misunderstood as holding that parol testimony of the parties

is not admissible. If the testimony in the record had been supported by some evidence of an actual ceremony and agreement between the two parties in the presence of a minister, priest or judicial officer and two witnesses, the question would then have been one for the jury. It was reversible error, however, for the court to give instruction No. 27.

23. In this connection, attention is directed to the rule of law,—

"That if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust." Section 868, subd. 7, Or. L.

It certainly was within the power of the state to have offered evidence of a marriage ceremony between the prosecuting witness and Golda Thompson, if a marriage ceremony was conducted.

24. Section 799, subd. 30, Or. L., is as follows:

"That a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage."

This presumption is disputable, and is overcome in a prosecution for adultery by the stronger presumption that the defendant is innocen.: Section 799, subd. 1, Or. L.

In the case of *State* v. *Locke,* 77 Or. 492 (151 Pac. 717), a prosecution for bigamy, there was evidence of a marriage ceremony supporting the testimony of the wife to the marriage.

Assignments of error Nos. 21 and 22 are predicated upon other instructions, which we deem were properly given. They are not of sufficient importance to be set out in full.

25. Assignments of error Nos. 13 and 23 are based upon the court's action in refusing to direct a verdict of not guilty, and denying the defendants' motion to set aside the verdict. It does not necessarily follow, because we hold there was not sufficient evidence of the marriage, that the defendant should have been discharged: *State* v. *Wheeler*, 93 Wash. 538 (161 Pac. 374).

26. It was error, however, in the court's refusal to set aside the verdict. The verdict should have been set aside and a new trial ordered because of the court's error in giving instruction No. 27.

27. Assignment of error No. 24 is predicated upon the claim that the Circuit Court was without jurisdiction to try the defendant, because information had been filed with the magistrate and no preliminary examination held. The magistrate did not have jurisdiction of the crime, and no error was committed in submitting the matter to the grand jury, which returned the indictment and met within two days after the alleged offense.

28. During the course of the trial some evidence of the decree of divorce was offered by the state divorcing the defendant from his wife. This offer was withdrawn. There is some evidence in the record, however, to the effect that the defendant was a married man. In passing upon the objection to the decree of divorce the trial court ruled that it would be presumed, until the contrary was shown, that the defendant was a single man. The authorities are unanimous, that there is no presumption that a man of marriageable age is either single or married: *Bennett* v. *State*, 103 Ga. 66 (29 S. E. 919, 68 Am. St. Rep. 77, 78). The marriageable status is one of fact and should be proved where it is in issue. If the defend-

ant is a married man, he has a complete defense because the prosecution was not instituted by his wife This, however, has already been stated and is one of defense. The state is not obliged to prove that he was either married or single. Because of the error committed in giving instruction No. 27, and denying a motion to set aside the verdict, the judgment is reversed and remanded for a new trial.

REVERSED AND REMANDED.

McBRIDE, C. J., and BURNETT and RAND, JJ., concur.