DANIEL YSAC, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.

91 N. W. 2d 49

Filed June 27, 1958. No. 34389.

*William E. Grubbs,* for plaintiff in error.

*Clarence S. Beck, Attorney General,* and *Richard H. Williams,* for defendant in error.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

Plaintiff in error, Daniel Ysac, hereinafter called defendant, was charged in an information in the district court for Scotts Bluff County with the crime of rape

under section 28-408, R. R. S. 1943. He was 19 years old at the time of the alleged offense. The prosecutrix was 15 years old at that time. The defendant entered a plea of not guilty and upon trial to a jury was found guilty as charged. Upon the overruling of his motion for new trial, he was sentenced to serve 7 years in the State Reformatory located at Lincoln. He thereupon prosecuted error to this court.

The information did not allege that the prosecutrix was previously chaste, although she was a girl 15 years of age, and there was evidence, which was not controverted at the trial, establishing her previous chastity. Under the rule stated in Frank v. State, 150 Neb. 745, 35 N. W. 2d 816, the failure of the State to allege previous chastity of the prosecutrix gives to the defendant the benefit of the defense of her consent and want of resistance on her part.

The defendant assigns as error: (1) That the evidence was insufficient to sustain the charge of rape for the reasons that the evidence showed that the prosecutrix did not offer the resistance legally necessary in order to make the admitted act of sexual intercourse rape and that the proof relating to the nonconsent of the prosecutrix to the admitted act was not established by the proper quantum of evidence; (2) that the trial court erred in admitting certain evidence over the objection of the defendant; (3) that the trial court erred in refusing to grant a new trial on the grounds of newly-discovered evidence in conformity with section 29-2103, R. R. S. 1943; (4) that the trial court erred in admitting into evidence a confession alleged to have been made by the defendant; and (5) that the sentence pronounced by the trial court upon the defendant was excessive.

The record discloses that in the early morning of July 6, 1957, the prosecutrix, Pearl Garneaux, hereafter referred to as Pearl or the prosecutrix, her stepmother, her 3 and 5 year old sisters, and Velmatena

White Magpie were walking along the street in Scottsbluff. The defendant was walking behind the prosecutrix and all of a sudden grabbed hold of her right arm. At that time a car, referred to as a "green Chevie" containing four boys, drove up close to the curb. The defendant started pushing the prosecutrix toward the car. She resisted by attempting to pull back, and the defendant pushed her harder up to and close to the car. She took hold of the door of the car. The four boys and the defendant forced the prosecutrix into the front seat of the car. She screamed, and the car drove off with the front door open. With the prosecutrix in the middle of the front seat and the defendant to her right, one of the boys drove the car 4 miles north and a quarter of a mile east of the city. During the ride the defendant, by twisting the arm of the prosecutrix behind her back and causing her pain, forced her to disrobe. During the scuffle her blouse and slip were torn. She objected, and when she did so, the defendant threatened that if she did not cooperate with his efforts she would be hurt. She cried, and was afraid they would kill her. The driver of the car stopped at a place on a gravel road where there was a rather steep bank. The defendant forced the prosecutrix from the car by twisting her arm behind her back and dragged her over the bank into a ditch on the opposite side. The defendant pushed the prosecutrix down, tied her hands above her head, and she fell backwards. The defendant started to take off his overalls. She tried to push him away but was unable to do so, and he had intercourse with her. The defendant did not let her get up, but pushed her back down. The four other boys from the car each took a turn having intercourse with her. After the last of the acts, one of the boys brought the prosecutrix her clothes, except her underpants, and she put them on. The underpants were later found on the shoulder of the road along the route the car had traveled. The prosecutrix refused to ride back to town with the

boys, and when the car disappeared from sight she began to walk toward town. The prosecutrix also testified that she had never seen the defendant or the other boys before; that she did not know them; and that at times during the ride they talked in the Mexican language which she did not understand.

The defendant's testimony was to the effect that he first saw the prosecutrix, her stepmother, and Velmatena White Magpie about 1 a.m. the morning of July 6, 1957, on the corner of Ninth Street and Ninth Avenue, and later saw them again near the corner of Ninth Avenue and Eleventh Street. The car in which he was riding pulled over to the curb and stopped. Velmatena White Magpie had a conversation with him and told him that the prosecutrix and her stepmother were on their way to a party, or had come from a party. The defendant asked if he and the other boys might go to the party and Velmatena White Magpie ran into the house where the party was supposed to have been held. During the conversation the prosecutrix was about 10 feet from the car in which the defendant was sitting. The defendant got out of the car and asked the prosecutrix if she would like to go for a ride. She did not answer, so he put his arm around her and started walking down the street with her. She appeared to have been drinking. From this point on the defendant's testimony was to the effect that the prosecutrix willingly went along on the ride, voluntarily disrobed during the course of the ride, and consented to and cooperated in the sexual intercourse had with him. Thereafter the defendant went back to the car and did not know what happened to the prosecutrix.

A police officer of the city of Scottsbluff testified that he saw the prosecutrix walking toward town and near the outskirts at about 6 a.m., on July 6, 1957. He observed that she had some dirt and weeds in her hair; that she looked ragged and dirty as if she had been lying on the ground; that her blouse was torn; and that

her arm was bruised. He took her to police head-quarters and she made complaint to him of the attack at that time.

Police officer Mowrey testified that he first saw a car fitting the description of the one driven by the boys at about 3:30 a.m., on July 6, 1957. The defendant was asleep in the back seat of the car. Mowrey arrested the defendant and two boys who were with him.

The doctor who examined the prosecutrix about 8 a.m. on July 6, 1957, testified that he found bruising of the external genitalia, and that microscopic tests revealed the presence of male sperm from semen on both the external area and inner vaginal tract.

The prosecutrix testified that she was bruised considerably from the physical treatment she received during the course of the ride and the scuffling, and during the process of the attack that resulted in the defendant having intercourse with her; and that as a consequence thereof she was forced to go to bed for the most part of a week.

The stepmother of the prosecutrix testified as to the torn condition of Pearl's clothing, the bruises on her arm, and the fact that the prosecutrix was in bed for 2 days and for a part of the week following the assault.

While at the police station the defendant made a statement in writing confessing to the facts in practically the same manner as testified to by the prosecutrix.

The rule as stated in Cascio v. State, 147 Neb. 1075, 25 N. W. 2d 897, is as follows: "The degree of force required is relative, depending upon the particular circumstances, but in any such case it must be sufficient to subject and put the dissenting woman within the power of the man, and thus enable him to have carnal knowledge of her, notwithstanding good-faith resistance on her part. In that connection, whether carnal knowledge was forcible and against her will or with her consent, is ordinarily indicated by resistance or lack of it by the woman. While the degree of resistance required is

also relative, depending upon the particular circumstances, the general rule is that a mentally competent woman must in good faith resist to the utmost with the most vehement exercise of every physical means or faculty naturally within her power to prevent carnal knowledge, and she must persist in such resistance as long as she has the power to do so until the offense is consummated." See, also, Medley v. State, 156 Neb. 25, 54 N. W. 2d 233; Brockman v. State, 163 Neb. 171, 79 N. W. 2d 9.

Under all the circumstances shown by this record, the jury could properly find that prosecutrix resisted the defendant in good faith and to the utmost of her ability. The evidence shows that the prosecutrix was a girl 15 years of age; that the defendant, who was 19 years of age, and four other boys forced her into a car; that her arm was twisted behind her back causing pain and distress during the course of the ride; that she was threatened and forced to disrobe; and that upon arriving at a certain point she was forced out of the car by the defendant. She was pushed, her hands were tied above her head, she was kicked in the leg, and her head held back while the defendant had intercourse with her. She endeavored to push him away, but was unable to do so. She was frightened, her clothing was torn, and her appearance could leave no doubt that unusual force was used in the commission of the act.

Whether or not the prosecutrix resisted the advances of the defendant to the extent of her ability under the circumstances presented by the evidence is a question of fact, and where her testimony, if believed, would indicate that she had so resisted, a verdict based on such testimony will not be set aside. See Medley v. State, *supra.*

The lurid details of the crime, as shown by the evidence, beyond question demonstrate that if the State's evidence is believed, every element of the crime of

rape was established. The evidence clearly sustains the verdict of the jury.

The defendant assigns as error the receiving of testimony of police officer John Wagner. The substance of this evidence was that he found the prosecutrix walking slowly toward Scottsbluff at 6 a.m., the morning of July 6, 1957. He asked her name and told her to get into the car. He was asked if he had a conversation with the prosecutrix on the way to the police station and he replied that he did. Objection was made that such conversation was hearsay. The objection was overruled. The trial court said it would depend upon what the conversation revealed or what it was about, and overruled the objection subject to a motion to strike this evidence if it was deemed improper. Thereafter the witness testified that the prosecutrix related that some Mexican boys had taken her into the country, taken her clothes off, and taken turns with her. There was an objection to this evidence as being prejudicial and hearsay, and not sufficiently related in time and place. This objection was overruled. The witness testified that the prosecutrix related more details concerning the removal of her clothing and in connection with the assault perpetrated upon her, and how she got back to town. The police officer further testified that the prosecutrix gave him the names of the boys, and that she named the defendant. There was an objection, and the court overruled the objection. This witness further testified that the prosecutrix told him that the defendant was the main instigator, and was the first to have intercourse with her. Objection was made to this testimony, and overruled.

At the commencement of proceedings on the second day of the trial, the trial judge instructed the jury that the court had determined that the conversation which officer John Wagner related was not admissible as evidence and therefore the jury was to completely disregard the portion of the officer's testimony which con-

cerned details of the offense and to erase it from their minds.

The rule of law upon which the defendant apparently bases this assignment of error and deems applicable is stated in the case of Jump v. State, 146 Neb. 501, 20 N. W. 2d 375, as follows: "In a prosecution for rape, the prosecutrix may testify in chief, if within a reasonable time under all the circumstances after the act was committed she made complaint to another, to the fact and nature of the complaint, but not as to its details; and that other may likewise testify in chief to such fact and nature of the complaint, but not as to its details." See, also, Krug v. State, 116 Neb. 185, 216 N. W. 664.

We believe that when the trial court subsequently, on its own motion, ordered this testimony stricken and charged the jurors to disregard it and erase it from their minds, it gave the defendant everything that he asked for. The defendant did not move for a mistrial on the ground that the admissibility of this evidence was prejudicial and that the error alleged to have been committed by the trial court could not be cured by this ruling or on any other ground. This matter was not called to the trial court's attention in the defendant's motion for new trial.

In Luster v. State, 142 Neb. 253, 5 N. W. 2d 705, this court said: " 'In order to review alleged errors occurring during the trial of a criminal case, such errors must be pointed out to the trial court in the motion for a new trial and a ruling obtained thereon.' " See, also, Wilson v. State, 43 Neb. 745, 62 N. W. 209; Fisher v. State, 154 Neb. 166, 47 N. W. 2d 349.

Alleged errors not brought to the attention of the trial court in any way in a motion for a new trial are not entitled to be considered or reviewed by this court. See, Luster v. State, supra; Hall v. State, 109 Neb. 273, 190 N. W. 898; Millslagle v. State, 138 Neb. 778, 295 N. W. 394.

This assignment of error cannot be sustained.

The defendant contends that the trial court erred in not granting a new trial on the grounds of newly-discovered evidence. To determine this contention it is necessary to review a part of the record relating thereto. On November 18, 1957, the defendant filed a motion for new trial wherein he alleged that there was newly-discovered evidence which could not have been produced at the trial by the exercise of reasonable diligence. On November 21, 1957, the defendant filed an affidavit in support of this assignment relating to newly-discovered evidence. This affidavit, in substance, was to the effect that during the trial of the defendant a witness had to be obtained from the custody of the federal marshal at Laramie, Wyoming, and that from an interview with this witness it was learned that one Phyllis Brave Heart could testify that she observed the prosecutrix drinking and acting in a manner contrary to and different from that as testified to by the prosecutrix at the time of the trial. The affidavit further stated that a subpoena had been issued for this witness in Scotts Bluff County and she could not be located in that county. On November 21, 1957, the trial court overruled this motion for new trial.

On January 11, 1958, a second motion for new trial was filed alleging newly-discovered evidence which could not have been discovered or produced by the exercise of reasonable diligence. An affidavit by counsel for the defendant, attached to the second motion for new trial stated in substance that Phyllis Brave Heart testified at the trial of one of the other boys involved in this same incident, and that her testimony was relevant and material to a finding of not guilty in that case. Attached to the second motion for new trial was a transcript of the testimony of Phyllis Brave Heart from the trial of the other boy. A reading of this testimony discloses that the witness Phyllis Brave Heart testified to essentially the same facts as did the witness Velmatena

White Magpie in the instant case, that is, that she had observed the prosecutrix and her stepmother drinking during the afternoon preceding the assault.

There is no supplemental petition in error covering the overruling of the second motion for new trial, made after the filing of the petition in error in this court on December 20, 1957. The result is that the second motion for new trial and the order overruling it are not properly before this court for consideration.

With reference to the first motion for new trial based on newly-discovered evidence and the overruling of it, the rule is that a new trial should not be granted a party on the ground of newly-discovered evidence, unless he makes it appear that the newly-discovered evidence is material to him, and that he could not by the exercise of reasonable diligence have discovered and produced it at the trial. See Cunningham v. State, 56 Neb. 691, 77 N. W. 60.

The testimony of Phyllis Brave Heart would constitute only a reiteration and would be cumulative of the testimony given at the trial by Velmatena White Magpie. It appears that the testimony of Phyllis Brave Heart was intended to impeach the testimony of the prosecutrix. In Bailey v. State, 36 Neb. 808, 55 N. W. 241, it was said: "While the general rule is established that a new trial will not be granted because of newly discovered evidence impeaching a witness, this rule has its limitations. This court has stated the doctrine as to cumulative evidence to be that a new trial will not be granted unless such evidence be of so controlling a character as to probably change the verdict." See, also, Flannagan v. Heath, 31 Neb. 776, 48 N. W. 904; Keiser v. Decker, 29 Neb. 92, 45 N. W. 272.

The affidavit of defendant's counsel discloses that at the time the witness Velmatena White Magpie was interviewed the defendant was apprised of the content of the possible testimony of Phyllis Brave Heart. As before stated, the defendant had a subpoena issued which

was returned on the same day marked as unable to locate in Scotts Bluff County. The defendant did not request a continuance of the trial in order to make a further search for this witness. From the record it appears that it would not have been a difficult task to have located this witness. There is no proper showing that the defendant could not have, by the exercise of reasonable diligence, discovered such evidence and produced it at the trial. The defendant's assignment of error cannot be sustained.

The defendant assigns as error the admission into evidence of the confession of the defendant. No specific assignment of error is contained in the petition in error to this court in regard to the confession offered and received in evidence by the trial court. There does appear to be a statement in the testimony of deputy sheriff John Hanley that he had known the defendant for 10 or 12 years, had known his father for the same length of time, and worked with and been a good friend of the defendant's father during that time. He saw the defendant on July 6, 1957, sitting on a bench in the reception room of the office of the county attorney. He had a conversation with the defendant at that time and testified: "I believe I asked him what he was doing in here this time, what he was into, and if I remember right that's where I told him if he didn't straighten up I was going to help his old man beat the hell out of him." Shortly thereafter Hanley had an interview with the defendant in the office of the county attorney. There is no dispute in the record that no threats or undue influence were used against the defendant. This statement made by the deputy sheriff Hanley was not one that was made in all seriousness, but rather as a sort of mild chastisement. This is evidenced by the conduct of this officer in the interview with the defendant which followed the remark made in the reception room in the county attorney's office. The sheriff of the county took a statement from the defendant shortly after the foregoing interview between officer

Hanley and the defendant. He testified that the defendant was cooperative, answered questions readily, and appeared to be at ease. Lieutenant Knudtson of the Nebraska Safety Patrol was present at the questioning of the defendant and testified that the defendant was cooperative, at ease, and made a statement voluntarily. To the same effect was the testimony of the chief of police of Scottsbluff.

This alleged error was not pointed out to the trial court in the defendant's motion for new trial and a ruling obtained thereon as is a prerequisite to a review of such error by this court. See, Luster v. State, *supra;* Fisher v. State, *supra.* The defendant's assignment of error cannot be sustained.

The defendant contends that the sentence is excessive. Where the punishment of an offense created by statute is left to the discretion of a court, to be exercised within certain prescribed limits, a sentence imposed within such limits will not be disturbed unless there appears to be an abuse of such discretion. See, Truman v. State, 153 Neb. 247, 44 N. W. 2d 317; Onstott v. State, 156 Neb. 55, 54 N. W. 2d 380.

The sentence in the instant case was not the maximum or in the upper range that the court could have imposed, and neither was it the minimum. We conclude that under all of the facts and circumstances presented by the record the trial court did not abuse its discretion.

Upon the entire record, there is no error prejudicial to the accused, and the judgment of the district court is affirmed.

AFFIRMED.

CARTER, J., participating on briefs.